BELLE COMPTON, Respondent, v. WILLIAM McMAHAN, ADMINISTRATOR, ETC., SAMUEL P. SPARKS, Interpleader, Appellant.

Kansas City Court of Appeals, November 23, 1885.

1. WILL—POWER TO EXECUTOR TO SELL LANDS.—A devise of land to *executors to sell* passes the interest in it; but a devise that *executors shall sell the land*, or that lands *shall be sold by the executors*, gives merely a naked trust power to sell. In such case the land will descend, according to the course of the law, to the heir, subject to the power. And when the ancestor directs land to be sold, not leaving it discretionary with executor as to time or otherwise, the land is considered money from the date of the ancestor's death; if there is discretion given to executor as to time, there will be no conversion until the land is actually sold.

2. ———— SALE OF LAND, BY WHOM MADE—CHANGE OF STATUTE IN THIS STATE.—Prior to the revision of 1879, as to sales under a will,

it was provided thus: "The sale and conveyance of real estate under a will shall be made by the acting executor, or administrator with the will annexed, if no other be appointed by the will for that purpose, *or if such person fail or refuse to perform the trust.*" In the revision of 1879, section 137, the words above italicised are omitted, thus leaving the matter as at common law. See *Dilworth v. Rice,* 48 Mo. 124; *Evans v. Blackwell,* 66 Mo. 437.

3. ——— RULE AS TO SUCH SALE AT COMMON LAW.—An executor derives his powers from the will, while an administrator with the will annexed, derives his powers from the law and not the will. An executor, *as such,* by virtue of his office as executor could not sell the lands of testator, directed by will to be sold, but only when so designated for that purpose, in which case he is trustee as well as executor, and it is in the character of trustee that he would make the sale; the power would not pass to an administrator with the will annexed. (But a court of equity would not allow a trust to fail for want of a trustee).

APPEAL from Johnson Circuit Court, HON. NOAH M. GIVAN, Judge.

*Reversed and remanded.*

Statement of case by the court.

The facts in this case are, that at the June term 1883, of circuit court of Johnson county, Missoui, an agreed statement of fact complying with statutory requirements was filed and the cause submitted.

From the statement the following facts appear:

That William McMahan, the defendant, is administrator with the will annexed, of the estate of William Stockton, deceased; that said William Stockton died August 1, 1881, and his will was duly probated August 9, 1881. The will (which contains much that is immaterial here) provides for payments of debts; that all his personal property be divided among his heirs, etc., according to certain conditions. The testator uses then the following language in reference to his real estate:

"It is my wish and desire that my executor shall as soon as it would be profitable and convenient, sell my real estate at such times and on such terms as he may deem best and proper, and divide the money arising from

such sale among my said children, subject to the exceptions and conditions above stated."

The remainder of the will provides that, as he leaves thirteen living children, and one dead, his estate shall be divided into fourteen shares and one share shall be one-fourteenth. The remainder of the will is not material.

It further appears from said statement that the personalty of the decedent was more than sufficient to pay debts; that C. C. Stockton was one of said testator's children; that at his death, the testator was seized of certain described real estate in Johnson county, Missouri; that on October 28, 1881, the interest of said C. C. Stockton in said real estate was exposed to sale under execution and bought by plaintiff for one hundred and forty dollars; that said execution was based on a judgment in favor of one Wm. Lemmon against said C. C. Stockton for over eight hundred dollars, dated February 15, 1879; that plaintiff paid the sheriff her said bid and she received from him a deed in due form; that on March 15, 1883, said administrator sold the land and has the proceeds in his hands, and that the share of C. C. Stockton is five hundred and eighty-three dollars; that on March 29, 1883, said C. C. Stockton signed, sealed and delivered to S. P. Sparks, an instrument of writing, wherein he says for the sum of three hundred dollars he has sold, conveyed, assigned and set over to said Sparks "all my title, whether legal or equitable, present or expectant, vested or contingent, whether as heir at law or legatee, in and to all the real and personal estate of which my father died seized or possessed."

It is then submitted to the court whether said administrator shall pay over the money to the plaintiff or the interpleader.

The finding of the court was for plaintiff, and aft proper steps by appellant the case was appealed.

SAMUEL P. SPARKS, for the appellant.

I. The direction contained in the will to the executor to sell, was positive; only the time and terms of sale was left to him, not whether there should be any

sale. This amounts to a *conversion* of the land into money from the death of the testator and the land becomes personalty, and the legal title is in the executor in *special trust*, and is not vendible on an execution against one of the heirs, treating it as land. 2 Jarman on Wills (5 Am. Ed.) 179; *Bogart v. Hertell,* 10 Peters 532; *Baker v. Copenbarger,* 15 Ill. 103; Freeman on Executions, 279; *Wilson v. Wilson,* 54 Mo. 213; 1 Story's Eq., sect. 793.

II. Even if the executor had only the naked power to sell, the interest of the heir was confined to the time between the death of testator and the sale of land by executor, and that was the only interest acquired by purchaser at such sale; nor could such sale prevent the execution of the power. 1 Sugden on Powers. 189; *Smythe v. Anderson,* 5 Cent. Law Journal, 453.

III. The sheriff's deed, conveying the interest of the heir, would not operate to convey the proceeds of the land in the hands of the executor arising from the sale of the land, under the will. A sheriff's deed does not operate to convey an after-acquired interest. *White v. Davis,* 50 Mo. 333; 3 Pom. Eq. Jur., sect. 1164.

IV. The determination of the issues in this case involves the title of real estate, if the theory of respondent is correct, but otherwise, according to the theory of appellant.

JOHN J. COCKRELL, for the respondent.

I. At common law a devise that executors "shall sell" vests no title in the executors, but only gives them a naked power to sell, and leaves the title in the heirs. 1 Williams on Executors, 654; 1 Sugden on Powers, 131; *Haggard v. Rout,* 6 B. Monroe (Ky.) 249; 4 Kent's Com. (7 Ed.) 336; Coke on Littleton, sect. 169. By section 3117, Revised Statutes, the *common law* of England, etc., shall be the rule of action in this state.

II. The title to realty being in the heir, he can convey it as any other realty, and the purchaser acquires the heir's title. Then when the executor sells the land

under the power, the grantee from the heir is entitled to the proceeds, and a subsequent assignment by the heir is invalid. 1 Williams on Executors, 660; Jarman on Wills, 658; *Crittenden v. Fairchild*, 41 N. Y. 289 ; *Geiger v. Maynard*, 6 Gill and J. (Md.) 420; *Romaine v. Hendrickson*, 24 N. J. Equity, 231.

III.   Though a mere equity may not be salable on execution in this state, in this case the heir has the *actual title* to the land.   The purchase of the heir's interest does not prevent the execution of the power.   But the fact that the executor has the authority to sell the land cannot divest the right of purchaser at execution sale on a judgment against the heir.

ELLISON, J.—This case presents some important legal questions, about which there is such diversity of opinion in the text books and adjudicated cases, that one finds himself lost in a maze of matter, impossible of elucidation.

In the first place, as this is not a devise to the executor, but merely a direction that he shall sell, it vests no title in the executor, but gives him merely a naked trust power to sell.   "The distinction resulting from the authorities appears to be this: that a devise of land *to executors to sell*, passes the interest in it, but a devise that *executors shall sell the land*, or that *lands shall be sold by the executors*, gives them but a power.   An eminent writer has concluded from an examination of all the cases, that even a devise of *land to be sold by the executors*, without giving the estate to them, will invest them with a power only and not give them an interest."

The conclusions arrived at by these writers are fully justified by the authorities on the subject, and may fairly be stated as settled law.

In such case it appears to be equally well settled that the land will descend, according to the course of the law, to the heir, subject to the power.

It is likewise well nigh universally held that when the ancestor directs land to be sold, the direction being

absolute, and not discretionary with the executor, as to time or otherwise, the land is considered money from the date of the ancestor's death. This, in recognition of that principle of equity, which considers that done which is directed to be done, and in a case like this, is denominated an equitable conversion.

It is familiar law that personalty goes to the executor and not the heir. There appears, therefore, when considered logically, an irreconcilability, on principle, in the two doctrines.

The authorities bring us to this : that land directed to be sold merely, does not go to the executor, but to the heir, subject to the naked power of sale. That land directed to be sold is to be deemed money, and as such, *does go to the executor.*

There are authorities hereinafter cited, well grounded in reason, which hold that if the direction to sell is absolute, but the *time* when the sale shall be, is left to the discretion of the executor, there will be no conversion into money till the land is actually sold. These, however, do not relieve the anomaly presented above.

In this case we find the will is, that "it is my wish and desire that my executors shall, as soon as it would be profitable and convenient, sell my real estate at such times and on such terms as they may deem best and proper."

There is, therefore, under the authorities, only a naked power given to the executor, and he takes no estate in the land. It is likewise an equitable conversion of the land into money ; whether at the testator's death or at the executor's sale, we shall see further on.

It is a conversion : for the direction to sell is absolute and only the time and terms discretionary. In such cases the conversion is complete.

The doctrine of equitable conversion is extremely artificial (4 B. Monroe 253), and from a recognition of this fact we naturally prefer, when authorities and precedents are so widely apart, to follow those most consistent with reason and an intelligent discrimination

between the different principles of fundamental law. The law, without volition on the part of the ancestor, casts the realty of which he may die seized, upon the heir. It is only by some act on the part of the ancestor, usually by will, that this course of the law will be interrupted or interfered with. Naturally, then, if I may use the word, the land of the ancestor descends to the heir, as it actually exists. If there is to be any change in this natural and ordinary mode it should be made to appear clearly. If it is not so expressed in terms by the ancestor, it should result irresistibly and imperatively from the general intention ascertained from the entire instrument, whether it be deed or will. When not so directly expressed and the intention is being sought, reference should be had to the reason and necessity of the thing thought to be intended. But of course neither reason nor necessity would overcome the expressed terms, or the plain intent; as a man, in this respect, is absolute master of his property and may control its descent, as he likes. There can be found in the will in this cause no express direction that the testator's land shall be considered money before the sale, nor is there anything in it going to show that was his intention, save the bare direction to sell. The evident object was to avoid the delay, expense and possible inequality of a partition, or indeed, recognizing that there could be no satisfactory partition made among so many heirs.

It is safe to say, that where no such intent is found in the instrument the cases would indeed be rare, where a testator would suppose a direction to sell his land for the convenience of a division among his legatees, would have the effect to wholly revolutionize its character, make of it, what it *is not*, years perhaps before an actual sale.

This, then, being an absolute direction to sell, but discretionary as to time, was not a conversion of the land into money prior to the executor's sale. This assertion has ample support from well known tribunals of extraordinary ability.

The supreme court of Kentucky, in the case of

*Christer exec'r v. Meddis* (6 B. Monroe 35), says: "As to the lots, as by the terms of the will they were not to be sold *until the trustee should think best to sell them*, and as he did not sell them during the life of the widow, *thinking* it not *best to do so*, they were not converted into personalty by the terms of the will, nor during her life, and her second husband and administrator is not entitled to any interest in them. Real estate is converted into personalty, immediately on the death of the devisor, only where the direction to sell is positive, without limitation as to time, and without discretion on the part of those to whom the power to sell is delegated. If discretion is given, as in the case before us, the conversion does not take place until the sale is made."

To the same effect is *Haggard v. Routs* (6 B. Monroe 247-249). So also the law is held in New Jersey: *Snowhill v. Snowhill*, 3 Zab. 447; *Hurlind v. Tuthill*, Saxt. 141; *Fluke v. Fluke et al.*, 1 Green, ch. 478. And we find the same doctrine advanced in New York: *Jackson v. Burr*, 9 John. 104; *Jackson v. Schamber*, 7 Cowen 187; *Moncrief v. Ross et al.*, 50 N. Y. 431. The case of *Moncrief v. Ross* is in support of the other New York authorities, but distinguished between that case and the other to which reference is made. While the decision is not easy to understand or reconcile with the others cited, yet the court does not pretend to qualify the other cases. The decision is put upon the ground of the evident intention of the testator.

There are decisions to be found, which appear to antagonize this view, but really do not. For, while the time named for the sale is in the future, yet it is fixed and certain.

Thus it is said, "if the direction to sell is absolute, it is no exception to the rule that land directed to be sold and turned into money, is to be considered as money from the death of the testator, for all the purposes of his will; because the period of sale is remote, and the conversion cannot be made until the time arrives." *McClure's Appeal*, 72 Pa. St. 414. To the same effect is *Hocker et al v. Gentry et al*, 3 Met. (Ky.) 463.

In *McClure's Appeal, supra,* the sale was to be at the death of the testator's wife. In *Hocker v. Gentry, supra,* it was to be when the youngest child arrived at age, and in *Moncrief v. Ross, supra,* the direction to sell was at the death of the mother. It would seem, then, that in order to make a conversion "out and out," from the testator's death, the direction to sell must be *positive* and *imperative* as to time. The time of the sale being in the future is no exception to the rule, so that it is fixed. There are other authorities, however, which are not to be reconciled to this view. Among those may be mentioned *Arnold v. Gilbert* (5 Barb. 190).

Recognizing the doctrine, that if the time is discretionary with the executor there will be no conversion till the sale is made, it follows that the land will descend to the heir. The title taken by the heir, however, will be subject, of course, to the execution of the power. In other words the heir takes the land with all the burden and all the benefits of ownership, until that ownership is determined by a sale under the power. This being true, the plaintiff's purchase at sheriff's sale gave her a title, extinguishable by an execution of the power. But does this entitle her to the proceeds of the sale of the land now in the hands of the executor? The money now in the hands of the executor belongs to said C. C. Stockton as *legatee* under the will and not as *heir.*

It is a maxim of law, that where two rights unite in the same person, they are to be viewed as if they existed in different persons. If a different person than C. C. Stockton, the heir, were entitled under the will, how could a purchaser at sheriff's sale against C. C. Stockton, the heir, claim anything under the will?

Hence it is evident, that by virtue of a sale of the land of C. C. Stockton, the heir, the purchaser will not be entitled to the personal interest of C. C. Stockton, the legatee. *Allison exec'r v. Wilson's exec'r,* 13 Sergeant & Rawle, 330.

As before stated, "nothing is better established than this principle, that money directed in the purchase

of land, and land directed to be sold and turned into money, are to be considered as that species of property into which they are directed to be converted." *Craig v. Leslie*, 3 Wheat. 563. Yet the beneficiary may elect to take the property as it actually is, and thereby save the conversion. It is a point over which there is an irreconcilable conflict, as to whether the election can be made by one, or whether to be made effective, it shall be made by all of the beneficiaries. It is held in Michigan, New York, and some other states, that one joint heir may elect, while in Virginia, Alabama, and others, it is expressly ruled, that none less than all, have that power. The English authorities seem to balance in favor of the idea that to be effective, the election must be by all. But be this as it may, there has been no election here. It is the election, and not the mere right to make it, which changes the character of the estate. Story's Equity Jur., section 793.

This latter proposition, among the many contradictory ones, which are connected with the doctrine of equitable conversion, stands uncontradicted. So it is equally well established that the election must be made before the property is converted, for until it be actually exercised, the property retains the same character as is impressed upon it by the testator, and is subject to the same rules of transmission as if the conversion were actually made. It can only be exercised by the beneficiary, that is, by the legatee.

The plaintiff here, is not the legatee nor his representative. As was said in *Allison v. Wilson, ex ec'r, supra,* she would have represented him only in his character of heir of the testator, in case any estate had descended on which the judgment might have operated ; but she could in no shape represent him in respect of an interest under the will, which vested in him by title paramount to the judgment. There being then no election, and the purchaser taking no title further than that which descended to C. C. Stockton as *heir*, as distinguished from legatee, it follows she only took what he took as heir, *i. e.*, his

interest in the land, subject to the power of sale under the will.

As this suit does not concern the land between the testator's death and the administrator's sale, we have nothing to do but announce that plaintiff has no right to the money now contended for ; and that, as interpleader, Sparks has a deed which, leaving out of view plaintiff's purchase, is confessedly sufficient to carry whatever interest C. C. Stockton may have in the money or land as heir or legatee, it would follow, but for another consideration, that he is entitled to the money. II. That consideration is this it will be remembered that the executor nominated in the will refused to act, and that the present defendant was appointed administrator with the will annexed, and it is he who has sold the lands and assumed the functions, duties and trusts placed upon the executor by the testator.

This brings up the important question, whether such an administrator can so act.

Formerly our statute of administration read as follows : "The sale and conveyance of real estate under a will shall be made by the acting executor or administrator with the will annexed, if no other be appointed by the will for that purpose, or if such person fail or refuse to perform the trust."

In the revision of 1879, section 137, an important amendment to this statute was made by omitting the words, "or if such person fail or refuse to perform the trust."

We are thus relegated to the common law on this subject, which we may state at the outset, is far different from the statute as it existed prior to 1879, and as it yet exists in most of the states.

An executor derives his powers from the will while an administrator owes his entirely to the appointment of the ordinary. 2 Blackstone, 507. And so it is said in recognition of this statement by Blackstone, though he is not cited, that an administrator with the will annexed derives his powers from the law and not the will. *Var-*

*deman v. Ross,* 36 Texas 111 ; *Tippet v. Mize,* 30 Texas 361.

The distinction between an executor's duty as such, and the duties he frequently performed by warrant of the will, ordinarily need not be kept in view, but in cases of this sort, it is of special importance.

"An executor, as the term is at present accepted, may be defined to be the person to whom the execution of the last will and testament of *personal estate* is, by the testator's appointment, confided." 1 Williams on Ex., top page 266, bottom page 226. There is practically no distinction between a will and a testament, though it was at one time said that when the instrument operated upon personal property it was called a testament, and when upon real estate, a devise ; but the more general and popular denomination of the instrument, embracing both real and personal estate, is that of last will and testament. 4 Kent, 502. And so these words "will" and "testament" are in modern days held to be synonymous and are used interchangeably. Originally it was not a testament unless an executor was named, and a testament was only as to one's chattels, and so with the combined words, will and testament. When the word will, alone, was used it was understood to refer to a devise of realty only.

These distinctions no longer exist, if indeed they ever did have a footing further than in the metaphysical notions of the old writers, for we find many of them breaking down all distinction in their own books. Littleton states : "A man may *devise* by *testament* his lands and tenements." And Blackstone uses the expression "a man may devise the whole of his *chattels.*" 2 Book, 493. And again he says real property may be conveyed by devise or disposition contained in a man's last will and testament. 2 Book, 373.

It may now be said with propriety that the word will, includes all instruments of a testamentary character. *Crosby v. McDonal,* 4 Vol. 610. And so now, while the distinction between the instruments in which an executor

may be appointed are broken down, yet the duties of an executor, as such, are now what they have always been.

The important question in this case is, has the executor, as such, been clothed with a power and trust. That is, did he take upon himself the power and trust by virtue of his office, or did the indiv·dual take it as a trustee, apart from the office of executor. If he takes it as executor, by virtue of the office, then it might reasonably be said an administrator can execute the trust.

In a very able and exhaustive review of a similar question Judge Cowen, in *Conklin v. Edgerton's adm'r* (21 Wend. 438), says, that the differences which have arisen in cases of this character, arise wholly "from confounding the legal office of an executor with that of one who is not so, in any sense of the word, but who is the mere donee of a trust power."

It will be found on examination, that in these cases where it has been held that an executor was empowered to sell as executor by virtue of his office, the decisions are founded on the idea that the testator has nominated him so to do. That is, he has made his executor also the donee of a power and trust. It is a question of designation, who has been designated? If the executor, it is a mere nomination of him as a trustee.

At common law executors as such, by virtue of their office as executors, could not sell real estate. They have never sold it under the warrant of a will, except when expressly or by necessary implication named for that purpose. Now whenever they are named for that purpose, they are trustees as well as executors, and it is in the character of trustees that they make the sale ; as, indeed, even though they should refuse to qualify as executors, they might nevertheless execute the power as trustees.

*Conklin v. Edgerton's adm'r, supra*, arose under a statute of New York as follows : " In all cases where letters of administration with the will annexed shall be granted, the will of the deceased shall be observed and performed; and the administrator with such will annexed, shall have the rights and powers and be subject

to the same duties as if they had been named executors in such will," yet notwithstanding this statute, the opinion of the court is, that the administrator with the will annexed, cannot sell lands which had been directed to be sold by the executor.  The will in that case gave to the testator's wife, Judith, "during the term of her natural life, the rents, issues and profits of all his real estate; and after her decease, devised all his real estate in fee to two sisters, two nephews and four nieces, to take share and share alike; and for the more easy and equal division of his said real estate, he authorized and empowered his executor "hereinafter named," after the decease of his wife, to sell and dispose of the said estate for the most money that could be gotten for the same, and in due form of law to execute deeds for the same in fee simple, and to divide the money arising from the sale among his sisters, nephews and nieces.

It will be seen that there is about the same nomination of executor in that case, as in this, and that the trust or special confidence reposed, is, if any difference, less in that case than in this.  Yet it is maintained by an argument to my mind absolutely unanswerable, that in such case the party named as executor was the donee of a power and trust, and as trustee he could execute the provisions of the will in regard to the sale of real estate, but an administrator could not.  That the statute cited above had reference to the duties of an executor *as such*, and not to his *trusteeship*, a thing wholly apart from his executorship.  This opinion by Cowen, Judge, was reversing that of the chancellor and in which he states in speaking of the chancellor's opinion "he (the chancellor) does not discuss or even allude to the question whether he (the executor) does not sustain a character entirely distinct, a character which in no propriety of legal speech can, as to this act of sale, be called that of executor.  The confusion of his two characters, I have before stated, is the undoubted ground of the difference which has arisen between the parties before us."  So thoroughly did the court sustain its position, that afterwards, when the case

found its way to the court for the correction of errors
(25 Wend. 224), the chancellor announces his views as
much shaken by that opinion, and the court affirm the
case, though on other grounds, taking care, however, to
approve of all that was said by Cowen, as to the common
law, and only putting the *quære* as to the effect of the
statute.   So far as we are concerned, as we have no
statute, the case stands in its full vigor, as to the common
law there announced.   This decision, besides being af-
firmed after exhaustive argument, has been referred to and
expressly approved in *Tanton v. Clark* (13 Met. 220).   The
court says in speaking of it:   "This decision is fully
sustained by a well established principle of common law
as laid down in numerous authorities."   The identical
doctrine is maintained in *Greenough and wife v.
Wells* (10 Cushing 571) ; *Treadwell v. Cardis* (5 Gray
341, 349).   It is also asserted in a leading case from Ohio,
(*Wills v. Cowper and Parker*, 2 Ohio 124), as well as in
*Vardeman v. Ross*, 36 Texas 111 ; *Smith et al. v. Mc-
Connell et al.*, 17 Ill. 135 ; *Knight v. Loomis, adm'r*, 30
Maine 204.

This common law doctrine is expressly approved in
many other states, though by statute, it has been re-
pealed in many of them.   Thus in *Evans v. Chew* (71 Pa.
St.)   Sharswood, J., says:   "It is as old as the year
book (15 Hen. 7th fol. 11b.), that land is not a testamentary
matter.   Hence a power relating to real estate given in a
will to executors was a common law power to them, *nomi-
natim ;* it did not, therefore, pass to executors, nor could
it be exercised by an administrator *de bonis non cum
testamento annexo.*   The subject is learnedly and ably
investigated by Mr. Justice Cowen, in *Conklin v. Edger-
ton's adm'r* (21 Wend. 430).   The common law in this
respect was changed in this state by act of assembly of
1800."   To the same effect is *Hester v. Hester* (2 Ired. Eq.
330, 339).   Our statute as it existed prior to the revision,
has been before our supreme court in at least two in-
stances : *Dilworth v. Rice* (48 Mo. 124) and *Evans v.
Blackstone* (66 Mo. 437).   In both these cases the decision

is put expressly upon the statute, as it then existed. The common law principle is recognized, and it is said, especially in the latter case, that it was to get rid of the niceties of the common law in relation to the execution of powers that the statute was enacted. It is significant in this connection, to notice that the revision, omitting that part of the statute, was made shortly after this decision.

It follows, then, from the foregoing statement of what I conceive to be the law, that she sale, made here by the administrator, is void and of no effect.

J. R. Kelly, who was the executor appointed in the will, and the trustee or donee of the power therein contained, is the proper party to execute this provision of the will. As said before, his duties as executor and trustee are wholly distinct. As *executor* he would have nothing to do with the *land*. Land is not a testamentary matter. *Evans v. Chew*, 71 Pa. St. 47, 49, 50. Powell on Devises says the law regards the sale as a thing annexed to the persons of those to whom the authority is given, because of the special trust that is put in them by the testator; which trust no man can have by the will (which in this respect operates as a warrant of attorney), but only those who are named, and when there is but one alive, the authority is relinquished and gone, because in such case they do not take as executors *virtute officii*, but as trustees. And that is the reason why they may sell the land, *although they refuse the administration.*

In *Judson v. Gibson* * ● * (5 Wend. 224), it was held that a renouncing executor was bound as a trustee, though he had declined the office of executor.

In the case of *Tampter v. Clark* (13 Met. 226-7) it is pertinently said that "there is another ground on which we hold very clearly, that the power to sell has not been transmitted to the administrator, if by law it could be. Tucker, the donee of the power, has never renounced it and the consequent trust; and we are not aware of any impediment to his executing it. He has, it is true, de-

clined the office of executor, but the power of selling real estate is no part of the business of an executor or administrator, unless he obtains license under the statute; he has no interest in the land and no authority to sell it, except the authority which may be derived from the statute. The executor in this case was the donee of a trust power, which was distinct from the office of executor, and the trust might exist for years after the duties of the office of executor had been fully performed. This trust power has never been renounced, and consequently has not been transmitted to the administrator."

Justice Wilde states that, in the year book 15 Hen. 7, 11, it is laid down for good law, "that if a man have feoffees upon confidence, and makes a will that his executors shall alien his lands, then if the executors renounce administration of the goods, yet they may alien the land, for the will of the land is not a testamentary matter, * * * . It was lately adjudged in the exchequer chamber by all the judges of England, that if a man makes a will of his lands, that his executor shall sell the land, and alien, etc., if the executors renounce administration and to be executors, that neither the administrators nor ordinary can sell or alien," etc.

But in case an executor should renounce the trusteeship, or fail to perform the duties and trusts therein imposed, the beneficiaries would not be without remedy. It is a familiar maxim that equity will never permit a trust to fail for want of a trustee. The beneficiaries could apply to the equity side of the circuit court for the appointment of a trustee to execute the trust and carry out the power. *Wills v. Cowper and Parker*, 2 Ohio 124, 131, 132. As has been before stated the land in this case descended at the testator's death to the heirs, subject to the power of sale. And in the case of failure or delay of the donee of the trust power to execute the trust, or in case of his renunciation of the trusteeship, the heirs would hold the title in trust for the beneficiaries. *Greenough and wife v. Welles*, 10 Cush. 571, 577, 578; Sugden on Powers, 394.

What the administrator has done with the proceeds of the sale, which he has made without authority of law, we do not know, nor is any question likely to arise in case the purchase money of the land has been paid him and distributed, now before the court. The result is the judgment will be reversed; and if the proceeds have been distributed to the legatees by the administrator in such way as to create an estoppel in favor of the purchaser, so that he will be protected in his title to the land as to the other legatees ; the receipt of the money by C. C. Stockton, or his assignee, would complete the estoppel in favor of the purchaser of the land. We are not advised as to the condition of all the parties in interest, or as to their capacity to estop themselves, and we, therefore, remand the cause for the ascertainment of these facts. All concur.