In re Final Settlement of Rickenbaugh.

42   328
d161s562

## *In re* Final Settlement of James Rickenbaugh, Executor.

### Kansas City Court of Appeals, December 1, 1890.

1. **Wills**: STATUTORY AND TRUST POWERS OF EXECUTOR. A will set out in the opinion is examined, and it is *held* that by it the executor was intrusted with two separate and distinguishable powers: the one, the administration of the personal estate, under the supervisory control of the probate court; the other, to sell the lands of the testator, and distribute the proceeds thereof, which was a distinct and independent trust, personal to the appointee, and contingent and limited, and was not annexed to the executorial office, and its exercise was not the performance of a duty as executor.

2. ———: PROBATE JURISDICTION: STATUTE. Section 136, Revised Statutes, 1889, is not of universal application, and has no application to cases where the trust is contingent and limited ; and said section does not make the executor, or a succeeding administrator, amenable to the supervisory jurisdiction of the probate court.

3. **Administration**: WILLS: EXECUTOR'S COMMISSION FOR SALE OF REAL ESTATE : JURISDICTION. The subject-matter of a controversy between an executor, who has executed such contingent and limited trust, and the devisees, in respect to the commissions claimed by the former for services rendered in the execution of the trust, is clearly within the jurisdiction of the circuit court, and without that of the probate court.

*Appeal from the Callaway Circuit Court.*—Hon. George Robertson, Special Judge.

Affirmed.

*Crews & Thurmond, Karnes, Holmes & Krauthoff,* for appellant.

(1) The power of sale given by the McKamey will vested in the executor as such, and not in Rickenbaugh as trustee. It was a power annexed to the executorial office, and its exercise was the performance of a duty

as executor. *Dilworth v. Rice*, 48 Mo. 124, 132, *et seq.;*
*Evans v. Blackiston*, 66 Mo. 437, 440; *Phillips v.
Stewart*, 59 Mo. 491, 494; Acts, 1883, p. 23; 1 R. S.
1889, sec. 137; *Mott v. Ackerman*, 92 N. Y. 539, 552; 2
Woerner's Administration, sec. 341, p. 723. In line
with these rulings, it is held that the executor must
charge himself with the proceeds of sales made in the
exercise of such power; that he is liable on his bond for
the proper performance of his duty, and the faithful
disbursement of the proceeds, although he may have
exercised the power of sale unduly. *Dix v. Morris*, 66
Mo. 514, 518; *State v. Dailey*, 7 Mo. App. 548, 551;
*Lewis v. Carson*, 16 Mo. App. 342, 356; *Lewis v.
Carson*, 93 Mo. 587, 591, 592. It follows necessarily
that, having performed duties as executor, and incurred
the attending responsibility, the representative has
become entitled to the statutory commission provided
in such cases. *Matter of Isaacs*, 30 Cal. 105, 112, 113;
2 Woerner, Administration, sec. 528. The statute is
designed to award a uniform rate, without regard to the
actual labor done or trouble had. *Mc Whorter v. Ben-
son*, 1 Hopk. Ch. 28, 42; *Matter of Allen*, 96 N. Y. 327,
330. These statutes are to be construed with liberality
in favor of the executor. 2 Perry on Trusts [ 4 Ed.] sec.
917; 2 Story Eq. Jur., sec. 1268, note; *West v. Smith*,
8 How. 402, 411. The commission is allowed, though
the sale be void. *Crenshaw v. Bentley*, 31 Mo. App.
75, 79, 80. The equity of the statute is so strong that
the commissions provided are extended to persons per-
forming fiduciary duties, such as trustees, committees
of lunatics, special collectors and the like, though not
named in the contract. 2 Perry Trusts [ 4 Ed.] sec. 918,
citing many cases. *Green v. Sanders*, 18 Hun. 308; *In
re Roberts*, 3 Johns. Ch. 43; *In re Livingston*, 9 Paige,
440, 442; *Meacham v. Sternes*, 9 Paige, 398, 403; *Savage
v. Sherman*, 24 Hun. 307, 311. The trial court allowed
no commissions whatever, not even on the three thou-
sand and twenty dollars actually received and disbursed

by the executor in money, as the aggregate of the amounts paid by the different devisees and purchasers in excess of their distributive shares, respectively, and paid over to those entitled thereto.   Hence, the ruling below was that the transaction was not one pertaining to Rickenbaugh's position as executor, but that he acted as trustee.   In other words, instead of being the donee of a naked power, he held the title in trust.   This view is erroneous, and necessitates a reversal.   It will be remembered that the act of 1883 ( p. 23 ) re-enacted the provision omitted in 1879, which was considered by this court in *Compton v. McMahan*, 19 Mo. App. 494; *Eneberg v. Carter*, 98 Mo. 647.

*G. B. Macfarlane* and *Bailey & Tincher*, for respondents.

( 1 )   The will vested in the devisees the fee-simple title to the land.   *Eneberg v. Carter*, 98 Mo. 647.   No interest was vested in Rickenbaugh, either as executor or trustee.   The authority to sell was not imperative. The power could only be exercised when request was made by the devisees themselves, or a majority of them. It is not conceded, however, that a trustee, other than an executor or administrator, is entitled to the statutory commission of five per cent. in this state.   If appellant is entitled to commission, by the allowance of the probate court, it is by virtue of Revised Statutes, 1879, section 222, as for money arising on the sale of real estate. That court has no jurisdiction to adjust or determine the compensation of trustees.   ( 2 )   The commission is allowed as compensation for the executor.   *Hawkins v. Cunningham*, 67 Mo. 418 ; 2 Woerner on Admin., secs. 524–533.   The foundation for the claim for commission is compensation for what is done by the executor in administering the estate.   ( 3 )   The power of sale was given Rickenbaugh as trustee, and not as executor. The probate court had no jurisdiction over him as such

trustee.  He was only entitled to reasonable compensation for his services, which, if called in question, the circuit court alone could settle.  2 Woerner on Administration, secs. 339, 340, and authorities cited; *Hazel v. Hagan*, 47 Mo. 280; *Owen v. Switzer*, 51 Mo. 328; *Littleton v. Addington*, 59 Mo. 278; *Scheidt v. Crecelius*, 94 Mo. 326; *Drake v. Price*, 5 N. Y. 432; *Hurlburt v. Durant*, 88 N. Y. 127; *Tainter v. Clark*, 13 Metc. 220. Mr. Rickenbaugh, personally, and not as executor, was given power to sell the real estate.  The duties performed by him in the division of the land were not such as pertained to his official character of executor, but what he did was the performance of a mere personal trust under the will.

SMITH, P. J.—On February 15, 1887, James I. McKamey, now dead, made the following will:

"FULTON, Mo., February 15, 1887.
"I, James McKamey, of the county of Callaway and the state of Missouri, do make and ordain this to be my last will and testament in the manner:  *First.* It is my will that my debts be paid.  *Second.* It is my will that Sarah and Laura Rickenbaugh each have five hundred dollars.  *Third.* It is my will that my wife, Margaret C. McKamey have, in addition to the amount secured to her by marriage contract, all my household furniture.  *Fourth.* It is my will that my niece, Eva LaForce, have five hundred dollars.  *Fifth.* It is my will that the remainder of my estate be equally divided between my nieces and nephews (naming them).  *Sixth.* It is my will that James Rickenbaugh be the executor of this my last will and testament, and that he have power when requested by a majority of the legatees to sell my real estate and make distribution.  In witness of which," etc.

It was duly signed, witnessed and probated.  Rickenbaugh duly qualified as executor and paid the debts out of the personal estate.

On February 15, 1888, the heirs of McKamey entered into a contract as follows : "This agreement, this day made and entered into by and between the undersigned, witnesseth : That, whereas James I. McKamey, deceased, late of the county of Callaway and state of Missouri, did by his last will and testament, which has been duly probated by the probate court of Callaway county, make the undersigned, his nieces and nephews, the equal residuary legatees of his estate ; and whereas a large part of said estate consists of real estate situate in said county of Callaway ; and whereas said testator did provide in his said last will and testament that his executor herein named, James Rickenbaugh, should sell said real estate and make a distribution of the proceeds among his said legatees, and that said sale should be made when said executor should be requested thereto by majority of said legatees, now, therefore, for the purpose of enabling said executor to execute said will for the mutual benefit of all the said legatees, we, the undersigned legatees, do hereby join in a request to said executor to make said sale as contemplated in said last will and testament ; this request, however, being based upon, and subject to the following conditions and agreement entered into by and between said legatees, and shall not be binding until signed by all said legatees, that is to say : *First.* ( This clause provides for a public road through the land.) *Second.* We agree and bind ourselves to stand by this further agreement, that three commissioners, disinterested householders of said county of Callaway, in no way related to any of the legatees, and not interested in the subject-matter of this agreement, shall be appointed by the probate judge of said county of Callaway, whose duty it shall be, after they are appointed and qualified by said officer, to view and appraise the real estate and so divide the same into twelve to fifteen lots of as near equal value as possible,

so as to not injure or depreciate the value of any of said land. They shall then value each lot separately, and we, the legatees, shall then draw lots of said parcels of land under the directions of said commissioners. And we and each of us bind ourselves to purchase of said executor the lot or parcel of land so drawn by us, respectively, at its appraised value as fixed by said commissioners. And should it happen that said land cannot be divided into fifteen lots without injury or detriment to the value of the same, and* some of the legatees should not get any part of said land ( the latter of whom to be determined by said commissioners), then we who should not get any part of said land agree and bind ourselves to stand by and abide the valuation that may be put upon the land purchased by the others for the valuation fixed by the commissioners, and those who get no land are to have their due proportion of the distribution in money. *Third.* It is further agreed that the executor of said last will may pay all expenses of this division out of the general assets of the estate. It being further understood that all the purchases made under this agreement shall be subject to the present leases of said land by the executor, which expire on the first day of February, 1889. This agreement is to be carried into execution as soon as convenient after the same is signed, and it shall not be binding unless fully carried out during the year 1888, and all details not fully provided for herein to be settled by said commissioners. And it is further understood and agreed that if, after the sale of said lands and distribution of the proceeds thereof, it is found that any debts not known or contemplated shall be presented and allowed against said estate, or any amount should be required to pay off any claim against said estate, or costs or expenses of administration, and any part of the proceeds of the sale of said land shall be necessary to pay the same, or any part thereof, then we and each of us

bind ourselves to refund our *pro rata* part to meet such payments. In witness whereof," etc. (Signed by the legatees but not by the executor.)

Pursuant to this agreement, three commissioners were appointed who divided the land into fourteen parcels, valuing said parcels, in some instances, in excess of the amount which the aggregate valuation made each distributive share, and in some instances below that amount. The legatees drew lots for said parcels as had been agreed. Afterwards the executor made his report of sale to the probate court. In his final settlement, the executor charged himself with the total proceeds of the land, thirty-seven thousand and twenty dollars. In his final settlement, the executor took credit for five per cent., the commission allowed by statute on the price of the land. J. W. McKamey *et al.*, a portion of the legatees, objected to the allowance of this demand; because: *First*, said executor never, within the meaning of section 222, Revised Statutes, 1889, made a sale of the real estate of said deceased; *second*, said land was not sold by the executor as contemplated by the will of the deceased; *third*, there was no sale of said real estate by the executor for thirty-seven thousand and twenty dollars, nor for any other sum, but said real estate was partitioned among the devisees under the will by arbitration and agreement, and said executor did nothing in the way of a sale of said land, but simply made deeds to the real estate in order to pass title thereto to the respective parties by agreement; *fourth*, all that said executor did by way of transferring said lands to devisees under said will was done by trustee under said will, or of said estate, with said will annexed, and for such acts he is not allowed by law the commission named in said section 222. The probate court overruled these objections and granted an appeal to the circuit court.

In re Final Settlement of Rickenbaugh.

On trial anew in the circuit court the objectors offered in evidence the will heretofore set out, the agreement of the legatees, the report of the commissioners and report of sale of the executor. The executor testified : ."I am executor of the will of James I. McKamey, deceased. I learned some time before the sale of the land that the parties wanted to make a division of the land. They told me they wanted to divide the land among themselves ; that they were afraid that the land would not bring what it was worth if it was put up and sold. I told them that my opinion was that I would have to make a sale of the land in order to carry out the provisions of the will ; that I did not object to accommodating them, but it would have to be done according to the will. The legatees did not request me to sell the land until this contract between them was gotten up. I knew there was another paper they got up for this purpose of dividing the land. I never saw it, but heard of it. I told them I did not think they could divide the land among themselves without a sale. I told them they had better get legal advice, and have it sold according to the will. General Hockaday was my attorney ; the agreement is in his handwriting. I received in cash from the sale of the land three thousand and twenty dollars. This amount was the sum total of the excesses paid by the different legatees over their *pro rata* share. The total sale of the land was thirty-seven thousand and twenty dollars. There were fifteen legatees, nephews and nieces, among whom the sum was divided according to the will. One-fifteenth of thirty-seven thousand and twenty dollars makes twenty-four hundred and sixty-eight dollars, the amount each was entitled to. Robert S. McKamey, one of the legatees, did not get any land. I held his note as executor for two thousand and ten dollars. I turned this note with the balance in cash over to him as his distributive share. The three thousand and twenty dollars cash received from sale of

land was distributed as other moneys of the estate ; it being included in the thirty-seven thousand and twenty dollars for which the land was sold  The reason I advised the parties to get advice as to the selling of the land was because I thought the will required the land to be sold by the executor and the proceeds distributed. I did not think the parties could divide the land among themselves.    I wanted to go by the will.    The deeds I made to the parties were alike.''

Witness then read one of the deeds ; the others being the same in form and recital.    The instrument recites the making and terms of the will, the qualification of the executor, the request in writing, that the land be sold, the sale of the land, consideration, and so forth.    This was all the testimony offered by the objectors.

The executor offered in evidence the executor's deed, hereinbefore referred to.    He also offered in evidence his annual settlement, in which he charged himself with the proceeds of the real estate, and credited himself with the amount paid to each devisee as his distributive share of such sale.    He also introduced in evidence the refunding bond executed by the devisees :

The executor offered the following receipt in evidence :

'' Received of James Rickenbaugh, executor of the last will of James I. McKamey, deceased, twenty-four hundred and sixty-eight dollars, as devisees thereunder, being my portion of the proceeds of sale of the real estate of deceased, sold and divided under authority of said will by said executor, this November 12, 1889.

'' SUSAN M. KING,

'' JOSEPH C. KING.''

The other legatees gave receipts to the same effect and for a like amount.

This being all the evidence, the executor asked the following instruction :    '' The court declares the law to be that the executor of James I. McKamey is entitled

to a commission of five per cent. on thirty-seven thousand and twenty dollars, the valuation of the land conveyed by the executor to the legatees; that the conveyance of the land by the executor to the legatees was a sale of the land as contemplated by the will, and as provided by the statutes for sale of land under will, and that the executor is entitled to five per cent. commission for the valuation placed upon said land, if said sale was made for distribution under the provisions of the will," which the court refused to give, and executor excepted. The court thereupon rendered a judgment that the executor be allowed no commission on the proceeds of said sale, except on the sum of two thousand dollars, which constituted a note in the hands of the executor against one of the devisees. The executor, in due time, moved for a new trial, alleging the following reasons: "*First.* The judgment is against the law and the evidence. *Second.* The court refused proper instruction on behalf of the executor. *Third.* The court should have approved the settlement of the executor in full, and should have allowed commission of five per cent. on the full amount of thirty-seven thousand and twenty dollars as the proceeds of the sale of the land distributed;" which motion was, by the court, overruled, and the executor duly excepted. The executor duly presented his affidavit and bond for an appeal, which being approved, he presented a bill of exceptions which was duly filed, and, thereupon, the case is appealed to this court.

The learned counsel for the executor makes the contention that the power of sale given by the will vested in the executor *as such* and not in him *as trustee;* and this power was annexed to the executorial office, and its exercise was the performance of a duty as executor. Involved in this contention is a denial that the executor was clothed by the will with two separate and distinct trusts. The tenability of this

contention must be examined and determined in the light of reason and authority. It seems to be incontrovertibly true that, in the death of the testator, by the terms of the fifth clause of this will, the title to his lands passed to and vested in the devisees therein designated. *Eneberg v. Carter*, 98 Mo. 649; *Chambers v. Wright*, 40 Mo. 482; *Compton v. McMahan*, 19 Mo. App. 494. The right of an executor to sell land does not exist *virtute officii;* for, by virtue of his office, he has to deal only with personalty. *Chambers, Adm'r, v. Wright's Heirs*, 40 Mo. 482. Our statute, chapter 1, Revised Statutes, 1889, nowhere confers upon executors any power to sell the real estate of the testator except for debts. When the authority for the sale is thus derived from the statutory provision, the executor making the sale acts in obedience to the orders of the probate court, and he is subject to its control, and the court possesses in such cases full supervisory jurisdiction in all matters respecting the same. *Coil v. Pitman's Adm'r*, 46 Mo. 53; *Dilworth v. Rice*, 48 Mo. 124. If the executor here has any specific power of sale it must exist under the provisions of the will alone. The sixth clause in the will invests the executor with "power, when requested by a majority of the legatees, to sell my real estate and make distribution." This power thus conferred exists outside and independent of the statute. It is derived from the will and not from the statute. The executor was then intrusted by the will with two separate and distinguishable powers.

Over the exercise of that which the statute conferred upon him by virtue of his office of executor, the probate court, as we have already stated, had a supervisory jurisdiction. But the contention of the executor is that, since he is, by the terms of the will, made the donee of the power of sale of the realty, the execution of this power is executorial. The power confided by the will to the executor authorizing him, in the happening of the contingency therein mentioned, to

sell the land of the testator and distribute the proceeds thereof, was a trust whose purpose was collateral to that of the mere administration of the estate. It was manifestly personal to the appointee. It was contingent and subject to limitation. The testator did not, by his will, peremptorily require the sale to be made unfettered by condition or limitation.

It is likely that he never expected there would be any occasion for the exercise of the power thus delegated, and his intention probably was, in case an unforeseen disagreement should arise among his devisees in respect to the division of the land, to avoid the consequent expense of partition, by providing that his friend whom he had made his executor, and in whom he reposed a special confidence, should make a sale of it, and distribute the proceeds according to the will. Under the will the power remained dormant in the executor until called into active existence by the contingency contemplated by the testator. This contingency might not have arisen for twenty-five years, or it may never have arisen at all. But, however long the time, it would seem the trust power remained dormant until vitalized by the contingency mentioned in the will. The executor in this quality of testamentary trustee was but the donee of a naked power of sale, not coupled with an interest, and which was hampered with a limitation. If this power had not been vitalized until after he made his final settlement of the estate, or if he had resigned his executorship before the emergency arose, he would still have had authority under the will to execute this specific trust. *Tainter v. Clark*, 13 Metc. 220 ; *Hazel v. Hagan*, 47 Mo. 280 ; *Owen v. Switzer*, 51 Mo. 328 ; *Littleton v. Addington*, 59 Mo. 278. *Campbell v. Johnson*, 65 Mo. 430, does not impair the force of the case in 51 Mo. 328, *supra*, in so far as it is an authority to support the statement of the law which we have just made.

But the executor insists that, since the statute ( Laws, 1883, page 23 ; Revised Statutes, 1889, sec. 136) provides that "the sale and conveyance of real estate under a will shall be made by the acting executor or administrator with the will annexed, if no other person be appointed by the will for that purpose, or if such person fail or refuse to perform the trust," if the executor had died or resigned his executorship before final settlement of the testator's estate, and before the execution of said trust, that the succeeding executor would have been authorized to execute the said power of sale. In cases where the power of sale conferred by the will is positive and peremptory, and is one that the administrator *cum testamento annexo* can execute, then the mandate of the statute is that he shall do so. *Dilworth v. Rice*, 48 Mo. 124 ; *Evans v. Blackiston*, 66 Mo. 437 ; *Phillips v. Stewart*, 59 Mo. 491. But we think that the power we are considering is not of that kind. It probably falls within one of the exceptions to this statutory requirement we shall presently mention. The statute is not certainly of universal application. In those cases where the execution of the trust power is dependent upon a contingency that may not happen for a great length of time or upon one that may not happen at all, or where it is not, by the express terms of the will, to be executed for a great length of time, as, perhaps, when the time of its execution is fixed by will beyond the time in which an executor or administrator is required by law to make final settlement, or where there is something in the trust of a nature that would render it improper for the successor to execute and carry it out, and, perhaps in other cases, the statute would be manifestly inapplicable ; but the beneficiary would not, on that account, be remediless, for equity will not permit a trust to fail for want of a trustee. A court exercising equity jurisdiction, on his application for that purpose, would appoint a trustee to execute the trust. *Compton v. McMahan*, 19 Mo. App. 494. It was,

doubtless, the object of the legislature, by the general provisions of the statute, to get rid of the slower and more expensive proceedings which a court of chancery in such cases would involve. *Evans v. Blackiston*, 66 Mo. 437. It was said, in the case just cited, that "we are not able to perceive any reason why, in the event of his refusal to act, the administrator with the will annexed cannot execute the power under direct legislative warrant as well as a trustee under an appointment of the chancellor could do." Where an administrator *de bonis non cum testamento annexo* thus becomes the donee of a power to sell land for the use of certain beneficiaries in a will his bondsmen are liable for the faithful performance of any duty imposed upon him by law to the same extent as are the bondsmen of a trustee appointed by the chancellor. *Evans v. Blackiston, supra*. But, because the statute has designated an administrator as the proper person to execute a trust power contained in a will, does it follow that he is amenable to the probate court for the performance of any duty respecting the execution of the trust? The specific power to sell is conferred by the will, and does not exist in consequence of statutory license. The administrator acts independently of the probate court. He is not amenable to it for the performance of any duty respecting the sale; the manner, time, price and place of sale are all matters resting in his sound discretion. He is not required to make any report or settlement with the probate court in reference to his action; in fact he has nothing to do with anything relating to the administration. *Coil v. Pitman's Adm'r*, 46 Mo. 51. And if an administrator *de bonis non cum testamento annexo*, who succeeds, by operation of law, as donee of a power of sale under a will, is not amenable to the supervisory jurisdiction of the probate court, most certainly the original donee of the power is not amenable to that jurisdiction.

No reason is perceived, nor has any been suggested, why this is not so. It is not believed, therefore, that the statute in any way has enlarged or extended the jurisdiction of the probate courts in respect to executors acting under a will which confers upon them the power to sell real estate. There is nothing in the statute or in the adjudications thereon which gives countenance to the idea that probate courts have any jurisdiction in respect to the execution of trusts. They have no chancery jurisdiction. *Scudder v. Ames*, 89 Mo. 496 ; *Butler v. Lawson*, 72 Mo. 227 ; *Baptist Church v. Robinson*, 71 Mo. 326. Nor can their powers be enlarged by the terms of a will. *Presbyterian Church v. McElhinney*, 61 Mo. 540. The rights and duties of parties growing out of certain determinate relations not based on contracts, but directly concerned with property such as trustees and *cestui que trust* and the like, constitute a large and important part of the primary rights falling under equitable jurisdiction. Pomeroy's Eq. Jur., sec. 100.

After a rather extended examination of the various points and authorities suggested in the very excellent briefs, with which counsel have favored us, we have reached the conclusion that the power given the executor to sell the land was not a power conferred upon him in his capacity as executor, but was rather a distinct and independent personal trust, whose execution depended upon a contingency which might, or might never, happen. It was a testamentary trust, existing entirely separate and independent of that of executor.

Assuming, but not deciding, that the trustee has executed the trust power with which he was invested by the will in conformity to the terms and conditions it prescribed, and, even then, the subject-matter of the controversy between the trustee and the devisees in respect to the commissions claimed by the former for services rendered in the execution of the trust is clearly

within the jurisdiction of the circuit court, and without that of the probate court.

In the case of *Smith v. Burchard*, 5 Denio, 169, it is held that the proceeds of a sale made by the executor, under a mere naked power contained in the will, are to be reckoned as part of the personal estate for the purpose of allowing commissions. In that case the title to the real estate was vested by the will in the executors. The power of sale conferred on them was absolute and imperative, except as to the time and manner of performing the duty imposed. The case is, therefore, distinguishable in its facts from the one at bar, and, even if it were not, we do not think the rule there declared can be invoked and made applicable to this case, in view of the law as it has been announced in the adjudged cases in this state, to which we have referred.

The conclusion which we have reached renders it wholly unnecessary for us to notice the other points to which our attention has been called by counsel. The judgment of the circuit court will be affirmed. All concur.