Scott v. Crews.

SCOTT v. CREWS *et al., Appellants.*

| 72 | 261 |
| 35a | 381 |
| 72 | 261 |
| 39a | 409 |
| 72 | 261 |
| 103 | 396 |
| 72 | 261 |
| 55a | 343 |
| 72 | 261 |
| 129 | 499 |
| 72 | 261 |
| 153 | 373 |
| 72 | 261 |
| f161 | 555 |
| f161 | 564 |

1. **Administration**: ORDER OF PROBATE COURT, NOT COLLATERALLY QUESTIONABLE, WHEN. If an order of the probate court revoking an administrator's letters shows upon its face all the facts necessary to confer jurisdiction on the court, its validity cannot be questioned in an action brought by the administrator *de bonis non* against the removed administrator to recover assets not accounted for.

2. ———: REVOCATION OF LETTERS. The probate court does not lose the power of revoking the letters of a delinquent administrator who fails to make settlement after being duly cited, by omitting to exercise the power at the term to which the citation is returnable. It may continue the settlement to a subsequent term, and if he is still in default, may then revoke them.

3. **Administration de bonis non.** The power of the probate court to appoint an administrator *de bonis non*, is not limited to cases where debts remain unpaid. Such an administrator may be appointed and may maintain an action against his predecessor as well in cases where there are no debts and the rights of heirs and distributees alone are to be protected.

4. **Administration**: INTEREST. An administrator sold property of the estate on credit, receiving notes of solvent persons bearing interest at ten per cent. Some of these notes were paid. The makers of the others remained solvent for several years, and there was no reason why the estate might not have been settled during that time. It remained open, however, and at a forced settlement made fifteen years afterward, the court charged the administrator with interest at ten per cent per annum with three rests. *Held*, correct. *Held*, also, that for money paid out for the estate, he should be allowed interest at the same rate with the same rests.

5. **Settlement.** If an administrator pays off a distributee, or buys up his interest in the estate, and afterward an action is brought

against him by an administrator *de bonis non* to recover assets not accounted for, he should, in such action, be credited with the amount of such interest.

*Appeal from Saline Circuit Court.*—Hon. Wm. T. Wood, Judge.

Reversed.

*Chas. A. Winslow* and *Shackelford* and *C. M. Napton* for appellants.

*L. W. Scott pro se,* with whom were *Geo. G. Vest* and *Jas. Cooney.*

Norton, J.—This proceeding was inaugurated in the probate court of Saline county by plaintiff, as administrator *de bonis non,* of the estate of Thomas E. Cheatham, deceased, under section 67, page 81, Wagner's Statutes, for the purpose of ascertaining the amount of money and all the rights, credits, deeds, evidences of debt and papers of every kind in the hands of defendant, Crews, former administrator of said estate, whose letters had been revoked, and having an order made for the rendition of same to plaintiff, and the enforcement thereof against Crews and his securities. Said cause was taken by appeal to the circuit court of Saline county, where it was, by consent, referred to a referee, who reported, as the result of his investigations, that there was due from said Crews to said estate the sum of $8,923.89. This report was confirmed, and a judgment entered accordingly, from which defendants have appealed to this court.

It is urged as a ground for the reversal of the judgment that the order of the probate court revoking the letters testamentary of Crews was a nullity, because it was made without proper notice. It is also objected that the probate court, notwithstanding the revocation of Crews' letters, had no power to appoint an administrator *de bonis*

*non*, it appearing that all the debts against the estate had been fully paid. It is also objected that the referee failed to credit Crews with various sums which the evidence and report showed him to be entitled to, and charged him improperly with interest. It is further objected that the referee failed to allow defendant credit for the amount of the distributive interest of Cheatham, one of the distributees of said estate, which it is claimed defendant paid or purchased from said Cheatham. The objections will be considered in the order stated.

I. Section 50, Wagner's Statutes, page 77, provides that "if any executor or administrator fails to make either 1. ADMINISTRATION: annual or final settlement, as required by order of probate court, not collat- law, after citation, the court shall order the erally questiona- ble, when. executor or administrator to give notice, when required, and to make such settlement, and may enforce such order by attachment, or may revoke his letters." In case of a delinquent executor or administrator, the above section authorizes the court to order such executor or administrator to make settlement or to revoke his letters, and as the order of the probate court revoking defendant's letters recites all the facts necessary under said section to give the court jurisdiction both over Crews and the subject matter, the propriety and regularity of its action is to be presumed. The order of removal recites that " he failed and still fails and refuses to make final settlement, or to show cause, after having been properly cited,to do so, to show cause why it cannot be made." All the facts necessary to confer jurisdiction thus appearing affirmatively on the face of the proceeding, the judgment of removal stands upon the same footing of unquestionable verity as do judgments of courts of general jurisdiction, and the finding and judgment of the court, until set aside, must be deemed conclusive. *Johnson v. Beazley*, 65 Mo. 250; *State ex rel. v. Weatherby*, 45 Mo. 20; *Jeffries v. Wright*, 51 Mo. 221.

But supposing that the order of revocation is open to collateral attack, we think it sufficiently clear that Crews

**2. ———: revocation of letters.** was properly cited. It appears that letters testamentary were granted him in 1857, that the only settlements made by him were in 1859, 1861, 1867 and 1870, and that on December 8th, 1873, citation issued, requiring him to appear and make settlement at the January term 1874 of said court; that he appeared at said term by attorney, and his settlement was continued to the February adjourned term; that at the April term, 1874, he appeared and filed proof of publication of notice of his intention to make final setttlement at said term, and the settlement was continued to the October term, 1874, and at said term again continued, and at the January term, 1875, Crews failing to appear and make settlement, the order of revocation was made. The citation had the effect of bringing him into court at the January term, 1874, and of keeping him there till a final disposition of the subject to which the citation related. There is no question but that at said term the court had full power to revoke his letters, and the indulgence extended to him by the court, in continuing his settlement from time to time, covering the space of one year, could in no view of it have the effect of ousting the court of jurisdiction thus acquired either over Crews or the subject matter involved. Ample power was given to the county court to make the order of revocation by section 8, page 108, Wagner's Statutes, as well as by section 50, *supra*.

II. It is argued by counsel that as all the debts against the estate had been paid, a right of action accrued to the **3. ADMINISTRATION DE BONIS NON.** distributees, and that, therefore, the county court had no power to appoint an administrator *de bonis non,* and that if appointed he could not maintain this proceeding. Section 67, page 81, Wagner's Statutes, provides that if any executor or administrator resign, or his letters be revoked, the court shall have power upon the application of his successor ＊ ＊ to ascertain the amount of money, etc., in his hands at the time of his resignation ＊ ＊ or revocation of his letters, and

to order the rendition of the same to the successor of such administrator, and to enforce such order and judgment against such executor and his securities in the following manner : first, for the amount of money specified in the judgment, by execution in the ordinary form; second, for all other estate, effects and papers, by attachment against the person or property of such executor or administrator. Section 47, page 77, Wagner's Statutes, provides that " if any executor or administrator die, resign, or his letters be revoked, he or his legal representatives shall account for and pay and deliver to his successor        *        *        all money        *        *        at such times and in such manner as the court shall direct." The succeeding section, 48, provides that " the succeeding administrator        *        *        may proceed at law against the delinquent and his securities, or either of them, or against any other person possessed of assets; and the following section, 50, confers full power on the county court, after notice, to revoke the letters of a delinquent administrator.

It is clear from these various statutory provisions that, upon the revocation of the letters of an administrator, the county court is clothed with power to have a settlement made in that court by the removed administrator. It is also clear that such settlement is to be made at the instance of the successor of such removed administrator, and it is also clear that the county court is invested with authority to appoint such successor, and that the exercise of. this power is not restricted to a class of cases, as contended for by counsel, where the administrator whose letters have been revoked has not paid all the debts against the estate. While an administrator holds the assets of an estate primarily for the payment of debts, the further duty is imposed upon him, after the debts are extinguished by payment, of paying to the heirs and distributees, under the direction of the court, what may remain in his hands applicable to that purpose. His full duty is not performed till both these things are done, where he has in his hands assets applicable

to both these objects. When it is conceded (as in this case it is) that where there are debts unpaid an administrator *de bonis non* can be appointed and can maintain either the summary proceeding provided in section 67, or an action on the bond of the removed administrator, to recover the assets for distribution among creditors, it seems to us to follow logically that he could be appointed and maintain either proceeding for the recovery of assets for distribution to the unpaid heirs and distributees. It would not be consistent with sound reasoning to say that an administrator *de bonis non* has the right to collect from his predecessor the assets in his hands for distribution among creditors, and deny to him the right to recover such assets for distribution among the heirs and distributees.

The cases of *Spraddling v. Pipkin* 15 Mo. 118; *State v. Matson*, 44 Mo. 305, and *State v. Thornton*, 56 Mo. 325, to which we have been cited by counsel as sustaining the objection we are considering, do not go to the extent claimed, viz: that when the debts of an estate have all been paid, an administrator *de bonis non* cannot maintain either such a proceeding as the present one or a suit on the bond of his predecessor. The case of *Spraddling v. Pipkin* has no application here; all that it decides is where the domicile of an intestate, at the time of his death, was in a foreign state, if an administration of his estate here has been finally closed by the payment of all debts against it, and the residue of the assets are transferred and carried into the foreign administration, an administrator *de bonis non* appointed here cannot recover them though brought again into this State. In the cases of *State v. Matson* and *State v. Thornton*, while they decide that when all the debts of an estate have been paid, the distributees may maintain an action on the administrator's bond before an order of distribution is made by the county court, the right of the county court in such case to appoint an administrator *de bonis non*, where an administrator's letters have been revoked, and the right of such administrator, when appointed, to main-

tain a proceeding under section 67, *supra,* or an action on the bond of the predecessor to recover the assets remaining in his hands, is neither negatived nor denied. But on the contrary, the inference may be drawn from what is there said that in such cases an administrator *de bonis non* might properly be appointed.

The precise point presented in the case at bar has been more nearly approached in the case of the *State v. Farmer,* 54 Mo. 439, than in any other which has fallen under our observation, where it is said that " the question in the case is, did money and assets come into the hands of the executors of Johnson, for which they have not accounted as such executors, but which have been converted to their own use. * * It was only necessary for the plaintiff in his petition to refer to any unpaid allowances against said estate for the purpose of showing that said estate had not been finally administered, so as to authorize an administrator *de bonis non* to be appointed. When such an administrator was appointed, it is made the duty of the former administrator to pay over to him whatever remains in his hands, whether the estate is indebted or not. The administrator *de bonis non,* when appointed, has the right to sue for and collect the assets for the purpose of properly distributing the same."

III. It is also urged that error was committed in charging the defendant with interest. It appears from the evidence that defendant was appointed administrator in 1857, and in October of that year made sale of the personal property of the estate aggregating $6,602.69, of which $37.24 was received in cash, and the balance, $6,565.45, in notes, with security, payable in twelve months, with interest from date at ten per cent. Of the notes thus received, one for $1,300, was executed by John T. Cheatham, one of the distributees; one by Ragsdale, the husband of another distributee, for $675, and two by Johnson, the husband of another distributee, one of these being for $1,000 and one for $1,346.50, the whole aggregating $4,322. The

land of deceased was sold January 20th, 1859, for $3,449.-67, one-fourth cash, the remainder in six, twelve and eighteen months, with ten per cent interest.  It further appears that the persons executing these notes were solvent, and that the payment of them could have been enforced prior to 1863.  It further appears that the Ragsdale note and the Johnson note for $1,000 had been fully paid with interest, and the note of John T. Cheatham partially paid, and that sometime in the fall of 1865 said Cheatham had a settlement with Crews, and agreed with him to pay, and did pay $650, and also transferred to defendant his, Cheatham's, interest as a distributee of the estate, (such interest being one-seventh,) and also agreed to procure the transfer to defendant of the interest of his sister, Mrs. Johnson, as a distributee, upon defendant surrendering to Cheatham his note for $1,300 and Johnson's note for $1,346.50, on which said Cheatham was security.  In this settlement the said notes were turned over to Cheatham.  It also appears that defendant took charge of this estate in 1857, and that it remained in his hands unsettled till his letters were revoked in January, 1875, and that no reason is disclosed by the evidence why the estate could not have been finally settled in 1860 or 1861.  The personal property had all been sold in 1857 to solvent persons on a credit of twelve months, and the land had been sold, and the purchase money all received and disbursed early in 1861.  Under this state of facts we think the following authorities, ( *Williams, Admr., v. Petticrew*, 62 Mo. 460; *In re J. L. Davis, Exr.,* 62 Mo. 450,) fully warranted the referee to charge interest at ten per cent, making three rests, as shown by his report.

While the exception taken to the report on the ground that interest was improperly charged, is not maintainable, the report and judgment entered upon it cannot stand because of the failure of the referee to allow defendant for claims of R. E. Snelling and Brown, Ruxton & Co., which the referee found had been paid by him in July, 1859, aggregating $556.47.  The balance reported by the referee as

being in defendant's hands, and the judgment rendered thereon, should be diminished by the amount of said payment and interest thereon at the same rate and with the same rests with which defendant is charged. Inasmuch as no interest was charged by the referee in the settlement of January 2nd, 1861, upon the balance ascertained to be in defendant's hands in the settlement of January 6th, 1859, the interest on the above omitted credit should be computed not from the time of payment, as defendant contends, but from the 2nd day of January, 1861, with the same rests adopted by the referee in charging interest. To cure this admitted error the plaintiff has offered to remit the sum of $1,953.91, but as the credit to which defendant is entitled, computing the interest as above indicated, is in excess of the amount proposed to be remitted, the error is not cured.

The referee also clearly erred in not allowing defendant interest on the sum of $671.31, which he found had been paid to Ragsdale on the 13th day of May, 1869. The judgment should be diminished by the interest on said claim computed from the 13th day of May, 1869, at the same rate at which interest is charged in the report and with the same rests.

We are also of the opinion that defendant was entitled to a credit for the distributive share of John T. Cheatham, 5. SETTLEMENT. and that error was committed in not allowing it to him. If the settlement made between said Cheatham and defendant in 1865, hereinbefore referred to, is to be regarded as a payment made to Cheatham of his interest as a distributee, he was clearly entitled to a credit for the amount of such interest; if it is to be regarded as a purchase, whereby Crews acquired such interest, we can see no good reason why he should not have the benefit of it in this proceeding, especially in view of the disclaimer made by Cheatham, that he had no interest in the estate, and that all the facts were before the court necessary for the ascertainment of the amount of such acquired interest.

In the said settlement between Crews and Cheatham, the evidence tends to show that Cheatham agreed to procure the transfer of Mrs. Johnson's interest as a distributee to defendant, but there is nothing to show that Cheatham was acting for her or by her authority, and hence she is in no manner bound by it, and for this reason the claim made by counsel that Crews is entitled to a credit for her distributive share, is not well founded. The judgment is reversed and the cause remanded, to be proceeded with according to the views herein expressed.