FRANCISCO, Administrator, Appellant, v. WINGFIELD et al.

#### Division One, March 29, 1901.

1. **Public Administrator:** REMOVAL: POWER TO COMPEL SETTLEMENT. Where a public administrator is ordered to take charge of and administer on an estate, and there is a will, he is vested with the same powers and assumes the same obligations as the executor, and his letters may be revoked by the probate court, and on motion of his successor he may be compelled by the probate court to make a settlement, and if he does not make such settlement and pay over to his successor the assets remaining in his hands as such adminis-

trator, he and his sureties are liable to the summary judgment provided by the statute, or to an action on his official bond.

2. ———: POWER TO SELL REAL ESTATE UNDER WILL: TRUSTEE. Where the executor under the will is unconditionally directed to sell the land, that power follows the office; and if the executor's letters are revoked before he obeys the direction, and the public administrator, as administrator *de bonis non* with the will annexed, is directed to take charge of the estate, he also has power to sell, and, if he does so, he and his sureties may be compelled by the probate court to account to his successor for all money which came into his hands from such sales. An absolute direction by the will to sell real estate operates as a conversion of the same into personal property, if not from the death of the testator, at least from the date of the sale. In such case the administrator *de bonis non* with the will annexed, does not become a mere trustee of the moneys received by him from the sale of such lands, but he receives them in his capacity as administrator, and he and his bondsmen are liable for them.

3. Administration: FINAL SETTLEMENT: DISCHARGE. Until a decree is entered in the probate court discharging the executor or administrator, his office continues, and he remains clothed with its duties, and is subject to the control and supervision of the court. In this case, the will directed the executrix to sell the land, loan the money and use the income to educate and maintain her minor children. She gave notice of final settlement and filed her accounts for such settlement, which settlement the court approved, but by order decreed that the estate should remain open and the administration continued for the purpose of selling the real estate in accordance with the will. She had prior to that time sold a part of the land, and afterwards sold more, but marrying again, her letters were revoked, and the public administrator was directed to take charge of the estate as administrator *de bonis non* with the will annexed, which he did, and sold the rest of the land, and now his successor sues both for the money received by him from such sales and that turned over to him by the executrix. *Held*, that there was no such final settlement by the executrix as operated to take the administration of the estate out of the jurisdiction of the court, and hence the court's subsequent proceedings and the acts of the public administrator were not void as to his sureties as being voluntary, but were binding on him and them.

4. ———: ADMINISTRATOR DE BONIS NON: NO DEBTS. It is not necessary to the validity of the appointment of an administrator *de bonis*

*non* that there should be outstanding debts against the estate. Such administrator can not, on that plea, escape the necessity of making a settlement of the money and other personal effects belonging to such estate, received by him as such.

Appeal from Saline Circuit Court.—*Hon. Richard Field,* Judge.

REVERSED AND REMANDED (*with directions*).

*Robt. M. Reynolds* and *L. W. Scott* for appellant.

(1) The settlement made by the former executrix in 1874, had only the force and effect of an annual settlement and was not a final settlement of the estate by which the probate court lost jurisdiction. (a) Because the same was not received by the court as a final settlement. Morehouse v. Ware, 78 Mo. 103. (b) Because the court at the time said settlement was filed, by its express order of record, continued the administration of the estate. (c) Because at the time of said settlement the executrix had about $2,000 of personal assets in her hands belonging to the estate of which she rendered no account. Fish v. Lightener, 44 Mo. 268; Garner v. Tucker, 61 Mo. 432; 2 Woerner's Am. Law of Admr., p. 1128, sec. 506; p. 1254, secs. 570 and 571. (d) Because the estate was otherwise not fully administered, and could not be, under the will, prior to the death of the widow, the then executrix. Smiley v. Cockrill, 92 Mo. 111; R. S. 1889, sec. 223; Wagner's Statutes 1872, sec. 17, art. 5. (e) The estate of deceased could not be finally settled contrary to the expressed provisions of his will. R. S. 1889, sec. 8916; G. S. 1865, sec. 49, p. 532. (f) Because no discharge had ever been granted to the executrix. 2 Woerner's Am. Law of Admr., pp. 1256 and 1257, arts. 572 and 573; Ruggle v. Webster, 55 Mo. 246; Rogers v. Johnson, 125 Mo.

202.    (2) The will of the deceased having peremptorily directed the sale of his real estate by his executors, the same became personal property in contemplation of the law, from the death of deceased, and as such became assets in the hands of executrix, and she was subject to the orders of the court with reference thereto.    The proceeds of the remainder of said land sold by him are personal assets for which he must account in the probate court.    McMahan v. Compton, 19 Mo. App. 494; 2 Woerner's Am. Law of Admr., p. 726, art. 342; p. 719, art. 339.    (3) The probate court had jurisdiction to appoint the defendant Wingfield administrator *de bonis non* of the estate of the deceased with the will annexed, as successor to Mrs. McGuire, the former executrix. (a) The authority of the former executrix was revoked by her marriage to R. A. McGuire.    R. S. 1879, sec. 42; G. S., chap. 120, sec. 34; Emmons v. Gordon, 125 Mo. 636; 140 Mo. 490.    (b) The estate had not been fully administered at that time as provided by the will, and she had large sums of money in her hands due the estate.    R. S. 1879, secs. 47, 48 and 49; R. S. 1889, secs. 46, 47 and 48; Scott v. Crews, 72 Mo. 261; Morehouse v. Ware, 78 Mo. 100; State ex rel. v. Heinrichs, 82 Mo. 541. (c) The fact that the debts had all been paid, and so found by the court, did not alter its jurisdiction in the premises.    Administration is for the benefit of the distributee as well as for the creditor.    Scott v. Crews, 72 Mo. 261.    (4) The plaintiff as such successor is the only party entitled to require such settlement and recover of defendant the property in his hands, and the distributees are not the proper parties under our statutes to require an accounting or to demand and recover the property.    R. S. 1889, secs. 46, 47 and 48; Morehouse v. Ware, supra; State ex rel. v. Heinrichs, 82 Mo. 542.    (5) It is the duty of Wingfield to account, and it is within the jurisdiction

of the probate court to compel him to account. R. S. 1889, sec. 215; R. S. 1879, sec. 222. (a) He is bound to account for all the property of the estate coming into his hands which he obtained either by the lawful exercise of his authority as administrator or which by a wrongful or irregular exercise he has received by virtue of the color of his office, and his sureties are bound with him. State to use v. Scholl, 47 Mo. 84; Scudder v. Ames, 89 Mo. 496; Gambles v. Gibson, 59 Mo. 585; Lewis v. Carson, 93 Mo. 587; McPike v. McPike, 111 Mo. 223; Emmons v. Gordon, 140 Mo. 490; In re Glover & Shepley, 127 Mo. 162. (b) The position that an administrator, having received property as such, is not responsible upon his bond for the same, is a position inconsistent with fairness and reason, and to which we are unwilling to give our assent. In re Glover & Shepley, supra. (6) The acting executor or administrator *de bonis non* with the will annexed, is the proper party to sell the real estate of deceased, authorized by the will to be sold, when no other person is appointed by the will, or when such other person fails to perform the trust, and his bondsmen are liable with him for the proceeds. G. S., ch. 122, sec. 1; R. S. 1889, sec. 136; Dilworth v. Rice, 48 Mo. 130; Evans v. Blackiston, 66 Mo. 441; Dix v. Morris, 66 Mo. 518; McPike v. McPike, 111 Mo. 223; Emmons v. Gordon, supra. (7) For the proceeds of the rent and sales of all real estate, whether sold under the power in the will or by order of the probate court, or without being authorized by either the will or the court, the administrator and his sureties are bound to account. Lewis v. Carson, 93 Mo. 592; State to use v. Scholl, 47 Mo. 84; Dix v. Morris, 66 Mo. 514; Gamble v. Gibson, 59 Mo. 592; McPike v. McPike, 111 Mo. 223; Emmons v. Gordon, supra. His sureties are presumed to have executed his bond with the knowledge of what the due administration of the estate and the law would cast upon him. McPike v. Mc-

Pike, supra.    (8) The power given by statute to sell the real estate of deceased, authorized by will to be sold, is to him, as administrator, and not as a trustee of an independent trust, and extends to all sales of real estate provided by the will. Evans v. Blackiston, supra; Dilworth v. Rice, supra; Emmons v. Gordon, supra; G. S., ch. 122, sec. 1; R. S. 1889, sec. 136. (a) The fact that in the first instance the power may have been personal to the party designated by the will to sell the same, or that the exercise of the power involved discretion, does not affect the right of the administrator to make the sale or his liability to account.   Dilworth v. Rice, supra; Evans v. Blackiston, supra; Emmons v. Gordon, supra.   (b) Nor is it true on principle, that probate courts and administrators have no jurisdiction of property intended by deceased to constitute trusts, and the fact that probate courts have no jurisdiction to enforce trusts and that administrators have no right to administer them, can not alter the duty of an administrator to account as administrator for such funds as are in his hands belonging to the estate, trust funds though they may be, nor alter the jurisdiction of the probate court to require him to account for them.   In re Glover & Shepley, supra.

*Duggins & Rainey* for respondents.

(1) The respondents are sureties upon the official bond of the public administrator.   "A surety is not held beyond the terms of his contract.   He is bound by his agreement and nothing else."   Bauer v. Cabanne, 105 Mo. 110; Tittman v. Green, 108 Mo. 33; Nofsinger v. Hartnett, 84 Mo. 552; State to use v. Anthony, 30 Mo. App. 641; State v. Medary, 17 Ohio, 565; St. Louis v. Sickels, 52 Mo. 122.   (2) It was the duty of every administrator to make final settlement of the estates in his hands, "at the first regular term of the court, after the

expiration of two years, unless further time has been given by the court by an order entered of record." Laws 1883, p. 23. This was the law of the State of Missouri at the time these sureties made and executed the bonds. "There is a principle that pervades the whole doctrine, on the relation subsisting between the creditor and a security debtor, that is, that the obligation shall by no liberal intendment, be carried, in the smallest degree, beyond the undertaking. And again, there is no moral obligation on the surety beyond, or superadded to, the legal obligation. His obligation being essentially a legal one, it would follow that if not liable in strict law, he is not liable at all." Winston v. Rives, 4 Stewart and Porter, 269, cited in Nofsinger v. Hartnett, 84 Mo. 555; State v. Anthony, 30 Mo. App. 641. (3) The office of public administrator was created for the purpose of enabling the probate court to have an officer, at its command, to take charge of estates, under certain circumstances, for the purpose of administering upon them—that is inventorying, paying debts and distributing same and settling finally in two years. The law in force at the execution of the bond was section 306, Revised Statutes 1879. The first, second, third, fourth and fifth clauses do not apply as the public administrator did not take charge of the estate under any such circumstances. The appellant contends that the public administrator took charge of the estate under the sixth clause. Said clause, in reference to said section, reads as follows: "It shall be the duty of the public administrator to take into his charge and custody the estates of all the deceased persons in his county in the following cases: .... Sixth, where, from any other good cause, court shall order him to take possession of any estate, to prevent its being injured, wasted, purloined or lost." In the case at bar the public administrator was ordered to take charge of, and administer the goods unadministered belonging to the estate, and fully execute the will

under the law.   The statute no where authorizes the public administrator to take charge of and execute a trust.   McCabe v. Lewis, 76 Mo. 302.   (4) The final settlement of the executrix and the order of the probate court disbursing the money, and the finding that all debts are paid, constitute a valid and binding judgment.   State to use v. Stevenson, 12 Mo. 178; State ex rel. v. Gray, 106 Mo. 526; Patterson v. Booth, 103 Mo. 417; State v. Roland, 28 Mo. 95.   (5) The whole estate having been settled, except as to the trust matter of selling the land, loaning the money, collecting the interest and paying it over to the widow, leaves nothing for the public administrator to do.   McCracken v. McCaslin, 50 Mo. App. 85.   (6) The power of selling the real estate of a decedent which is given to acting executors or administrators with will annexed in General Statutes, chapter 122, section 1, is limited to a power to sell in order to bring land into a course of administration—they can not sell in order to carry out a trust for a collateral purpose. In re Rickenbaugh, 42 Mo. App. 340; Compton v. McMahan, 19 Mo. App. 494; 2 Perry on Trusts (2 Ed.), sec. 500; 24 American Law Register, p. 696 and cases cited.   (7) As a general rule, administrators with the will annexed are clothed only with the ordinary duties and powers of administrators, and possess only the general functions of executors in settling estates.   Perry on Trusts (2 Ed.), sec. 500; Anderson's Law Dictionary, p. 32.   (8.) The judgment of the probate court approving the final settlement of Francis M. Hawkins, as executrix, and the finding that all debts were paid and ordering the distribution of the balance in her hands, stands as a judgment binding upon all the world.   Creasy v. Anderson, 43 Mo. 13; Jourdon v. Meier, 31 Mo. 40; Leonard v. Sparks, 117 Mo. 103; Murphy v. DeFrance, 105 Mo. 53.   (9) The power given in the will to sell the land is not a power incident to the administration of the estate.   It is a trust given to the wife of the tes-

tator, to sell the land, loan out the proceeds, and use the interest in assisting in raising his younger children; and to thus hold the proceeds until the death of the testator's wife (the executrix). The time fixed for the distribution was not two years, but contingent upon the death of the testator's widow. It is clear that this kind of trust is of such a nature as would render it improper for the successor or public administrator to carry it out. In re Rickenbaugh, supra.

ROBINSON, J.—This is a proceeding under sections 47 and 48, Revised Statutes 1889, instituted in the probate court of Saline county, against James Wingfield, former administrator in charge of the estate of George S. Hawkins, deceased, whose authority had been revoked, and the sureties on his official bond, to ascertain the amount of money and property in his hands, and compel him to account with the plaintiff as administrator *de bonis non* of the deceased, and for judgment against Wingfield and his sureties. The probate court dismissed the proceeding for want of jurisdiction. Plaintiff then appealed to the circuit court, where upon trial anew, like judgment was rendered, and the plaintiff again appealed.

The record shows that George S. Hawkins died in Saline county, Missouri, in 1871, leaving a will which was duly admitted to probate in that county. He appointed M. M. Rhoads and his wife, Frances M. Hawkins, executor and executrix thereof. After giving his wife a life estate in all his personal property, and a large portion of his real estate, the will provided: "I will the remainder of my land being on the south side of the road above named, and the Faucett tract be sold by my executors, the money arising from the sale of said land to be loaned out, and that my wife be permitted to use the interest of the same in assisting her in the raising of and educating of my younger children. After the death of my wife I will that my

executor is fully authorized and empowered to take in charge all of my property both real and personal that is on hand, and to sell and dispose of the same either at public or private sale, and divide the proceeds among my children."

The widow alone qualified, and took charge of the property, and proceeded to administer on the estate. She made an annual settlement in 1872, and gave notice of her intention to make a final settlement at the January term, 1874, of the probate court. On January 9, she appeared and filed an account for final settlement, showing a balance in her hands of $375.80. The probate court approved the settlement, found that all the debts had been paid, and thereupon ordered "that she retain said sum of $375.80, as her property under the will, and that the administration of such estate be continued for the purpose of carrying out the provisions of the will of the said deceased in selling the real estate, and lending out the money received from the same." The widow continued in charge of the estate until August, 1885, when the probate court, by reason of her marriage, revoked her letters and ordered defendant Wingfield, public administrator of Saline county, to take charge of said estate as administrator *de bonis non* with the will annexed. At the time her authority was revoked, she had in her hands as executrix, in addition to the balance of $375.80, the sum of $855 in cash, and several notes taken by her on account of the purchase price of certain real estate sold under the power of sale contained in the will.

In pursuance of said order, Wingfield made an inventory of all the real and personal property belonging to the estate, except that portion of the land theretofore sold by the executrix, and filed the same in the probate court. On her failure to turn over the notes and money in her hands, Wingfield as such administrator began a statutory proceeding in the probate court to require her to account, and for judgment against her and the

sureties on her bond, which ultimately terminated in a judgment in favor of Wingfield for $855. This judgment was afterwards collected by him.   She also delivered to him a note for $890 received by her for the purchase price of certain real estate sold by her as executrix under the power of sale contained in the will.   Afterwards, Wingfield sold the remaining portion of the real estate, except that portion in which the widow had a life estate, under the power given by the will as administrator, and as such received the purchase money and executed deeds therefor.   Such sale was reported to and approved by the probate court, although there never was any order of the court directing the sale thereof.   The administrator continued to make regular annual settlements with the probate court in which he charged himself with the amounts received from the sale of real estate and interest thereon, together with the amount collected on the judgment against the executrix, and took credit for the expenditures, until 1892, after which time no further settlements were made.

In August, 1895, the probate court revoked the letters of Wingfield, and ordered plaintiff, then public administrator of Saline county, to take charge of the estate, and administer the goods unadministered belonging to the estate.   At the time of revocation of his authority there remained in his hands, as shown by his annual settlements, notes and money amounting in the aggregate to $5,517.05 derived from the sale of this real estate, in reference to which no order of distribution had been made.   On Wingfield's failure to make a final settlement of the estate, and deliver to plaintiff as his successor the amount of money and property shown to be in his hands as the proceeds of the sale of said real estate, this proceeding was instituted against him and his sureties on his official bond, based on the theory, that upon the death of the testator the probate court became vested with jurisdiction to administer on his estate, and

that the jurisdiction thus obtained continued until the estate was finally wound up and all the money and property in the hands of the administrator belonging to said estate, and received in his official character, accounted for and delivered to the parties entitled thereto; that having by virtue of his authority as administrator *de bonis non,* received the proceeds of the sale of these lands, both he and his sureties are bound to account in his character as such administrator with his successor under the supervison of the probate court.  In other words, the plaintiff maintains that inasmuch as Wingfield, by his own showing, received the proceeds of the sale of land belonging to the estate, under color of his office, he is chargeable therewith, and can be required to account in his official capacity with the probate court therefor.

Counsel for defendants, on the other hand, contend: first, that the estate was finally settled by the executrix in January, 1874, consequently there was nothing further for the probate court to do; that by reason of such settlement the probate court lost jurisdiction of the matter, and that all proceedings, of said court touching the estate since such settlement, including the order appointing Wingfield administrator *de bonis non,* as well as the order placing the estate in plaintiff's charge as his successor, are absolutely void, and that the plaintiff was not entitled to recover the proceeds arising from the sale of land under the power of the will; second, that as the money in Wingfield's hands was derived wholly from the sale of real estate, under a specific power given by the will creating an independent trust, the same is not an asset of the estate, but constituted a trust fund which was held by him as trustee, and not in his representative capacity; that he was not chargeable in this proceeding with, or liable for, the proceeds received from the sale of real estate sold by him as such administrator under the power of sale contained in the will, and, therefore, is not accountable in

the probate court for a fund received by him as trustee; moreover, that all controversies in reference thereto should be determined in a court of chancery.

So that, the question first presented by this appeal is, the right of the probate court to compel an accounting by defendant Wingfield after the revocation of his authority, and the appointment of his successor.

The authority of the probate court to require an accounting is expressly given in this State by statute. Section 47, Revised Statutes 1889, which was in force at the time this proceeding was instituted, provides that: "If any executor or administrator dies, resigns, or his letters are revoked, he or his legal representatives shall account for, pay, and deliver, to his successor .... all money, real and personal property of every kind, and all receipts, credits, deeds, evidences of debt, and such papers of every kind of the deceased, at such time and in such manner as the court shall order, on final settlement with such administrator or executor or his legal representatives, to be made on motion of his successor."

By the succeeding section it is provided: "If any executor or administrator resign or his letters be revoked, it shall be the duty of his successor, .... to move the court to compel the executor or administrator removed, or having resigned, to make final settlement; and on such motion, after due notice to such executor or administrator, the court having jurisdiction shall ascertain the amount of money, the quality and kind of real and personal property, and all the rights, deeds, evidences of debt, and the papers of every kind of the testator or intestate in the hands of such executor or administrator, or that came into his hands, and remain unaccounted for at the time of his resignation or removal from office or revocation of his letters, and to enforce such order and judgment against such administrator or

executor, and his sureties if they had due notice of proceedings."

The manifest purpose of the statute is that all the property belonging to the estate shall remain in the hands of the executor or administrator, subject at all times pending the administration, to the jurisdiction and supervision of the probate court, this supervisory control being necessary for the purpose of properly administering the estate.

"It is clear from these various statutory provisions," says NORTON J., in Scott v. Crews, 72 Mo. 261, "that, upon the revocation of the letters of an administrator, the county court is clothed with the power to have a settlement made in that court by the removed administrator. It is also clear that such a settlement is to be made at the instance of the successor. . . . . While an administrator holds the assets of an estate primarily for the payment of debts, the further duty is imposed upon him, after the debts are extinguished by payment, of paying to the heirs and distributees, under the direction of the court, what may remain in his hands applicable to that purpose. His full duty is not performed till both these things are done."

When the public administrator is ordered to take charge of and administer on an estate, and there is a will, he is vested with the same powers and assumes the same obligations as the executor or administrator with the will annexed, and if he does not make settlement and pay over to his successor the assets remaining in his hands, as such administrator, he and his sureties are liable to the summary proceedings provided by the statutes or to an action on his official bond. It is clear, therefore, that the remedy against an administrator whose authority has been revoked, is in the hands of his successor.

It appears from the record in this case that Wingfield as administrator, in addition to the note of $890 which the removed executrix delivered to him, recovered a judgment

against her and the sureties and the sureties on her bond for
$855, all of which was collected and received by him as such
administrator and brought into his accounts and settlements
with the probate court; besides, he sold all the real estate cov-
ered by the third clause of the will, except the portion thereof
sold by the former executrix, which sales were reported to and
approved by the probate court, and carried into his annual
accounts and settlements as administrator, and took credit for
taxes, interest paid the widow, probate fees, and compensation
for himself and attorneys. The balance shown to be in his
hands by this record is composed wholly of the proceeds of the
sale of these lands. By section 137, Revised Statutes 1899, it
is provided that the sale of real estate under a will, may be
made by the acting executor or administrator with the will
annexed, if no other person be appointed by the will for that
purpose, or if such person fail to perform the trust. In Dil-
worth v. Rice, 48 Mo. 130, WAGNER, J., in construing this sec-
tion, says: "The statute law authorizing the sale of land by
an administrator with the will annexed, where the executor has
failed or neglected to act, has existed ever since we have been a
State. Every testator, in making his will, must be presumed
to be cognizant of it, and I am satisfied that the statute should
be held to extend to a power of sale conferred on executors
where they are peremptory in their character, although they
may be accompanied with and involve the exercise of discre-
tion."

· The same rule is announced in Evans v. Blackiston, 66
Mo. 437, and in Dix v. Morris, same volume, 514. In com-
menting on the authority of an administrator *de bonis non* with
the will annexed, to sell real estate under the power of sale con-
tained in a will, NORTON, J., in the latter case, remarked: "It
was expressly provided in the will that the executor should
have authority to sell all or any portion of the testator's estate,

real or personal, on such terms as to him should seem good, in order to carry out its provisions. This unquestionably gave him full power to assume control of both the realty and personalty, and sell the same independent of any order of the probate court." The power of sale conferred by the will in question, is absolute and unconditional except as to the time and mode of performing the duty imposed. The testator, it will be observed, directed a positive and peremptory sale of this land and the distribution of the proceeds thereof by his executors, untrammeled by any conditions or limitations whatever. This power clearly comes within the scope of the official duties imposed by law on executors, is executorial in its nature, and follows the office. So that the administrator with the will annexed could properly execute such power. In 2 Woerner's American Law of Administration, section 339, it is said: "A direction to convert the whole estate into money, after the death of the executrix, .... vests the power by implication in the administrator *de bonis non* with the will annexed. So, when power is given by will to executors to sell real estate with a view to distribute the proceeds among legatees, the power belongs to them by virtue of their office, and may be exercised by an administrator *cum testamento annexo*. . . . . Where the will imposes upon executors the duty of selling real estate, without discretion, the power follows the office. . . . . In such cases the direction to sell the real estate for the purpose of administration amounts to a conversion of the land, and the proceeds become legal assets for which the executor as such, and not as a trustee, is liable." In speaking of the rule of equitable conversion, which imposes upon real estate, directed by the testator to be sold for the purpose of distributing the proceeds to the persons designated by him, the character of personal property, the same author in a subsequent section, 342, says: "The rule invoked by this doctrine is, that in equity, property will

be treated as being already what the testator intended it to become. If the conversion is complete, out and out, or absolute and for all purposes, it operates immediately upon the death of the testator, and therefore determines the devolution of the property to the heirs, devisees, or executors, not according to the character in which the testator left it, but according to that into which he has directed it to be converted. . . . . It should be remembered, however, that, where there is an imperative direction to convert, the discretion given as to the time of sale, or the mode or manner, does not work an exception to the rule; but if the conversion is postponed to a time certain, before the arrival of which the property is, according to the testator's direction, to be enjoyed by persons other than the ultimate beneficiaries, there is of course no conversion until the expiration of such time." As already seen, the power of sale conferred upon the executor in the case here under consideration, was absolute and imperative, peremptorily requiring them to sell the land and distribute the proceeds thereof, unhampered by conditions or limitations.

The power thus given is in no sense personal to the executors, and does not constitute a personal trust or confidence, but on the contrary is one of those powers annexed to, and following the office of the executor, and may under our statute be exercised by an administrator *de bonis non* with the will annexed.

Cases are not wanting to support the doctrine that under such circumstances the purchase money received from the sale of real estate becomes personal assets in the administrator's hands for which he and his sureties are liable.

In Dix v. Morris, 66 Mo. 514, which was a proceeding by scire facias, issued by the probate court against Morris as surety on an executor's bond, for refusing to pay the balance found in the latter's hands on final settlement, it was sought

to avoid payment of such balance by showing that the amount thereof was made up altogether of rents and the proceeds of the sale of land. The will authorized the executor "to sell and convey by deed or otherwise all or any portion of my said estate, real, personal, or mixed, on such terms or conditions as he may think proper." In disposing of this question the court used the following language: "It was expressly provided in the will that the executor should have the authority to sell all or any portion of the testator's estate, real or personal, on such terms as to him should seem good in order to carry out its provisions. This unquestionably gave him the power to assume control of all the realty and personalty and sell the same independent of any order from the probate court." This case is referred to and expressly approved in McPike v. McPike, 111 Mo. 227. In speaking of the power of disposition of the real estate conferred by the will, the court, in the course of its opinion, said: "This unquestionably made the real estate assets in his hands for which he and his sureties were liable."

In Gamble v. Gibson, 59 Mo. 585, it was held, that, although the general principle is that the realty descends to the heirs, and the executor has nothing to do with it except in case of deficiency of assets, yet, when, as a matter of fact, he does retain charge of it and collects the rents, he is responsible for them as executor.

In State to use v. Scholl, 47 Mo. 84, the administratrix, without any order of the probate court, sold a leasehold, the fixtures and good-will of a saloon, and left the State without accounting for the proceeds of the sale received by color of her office, and her sureties were accordingly required to make good the loss to the estate.

And more recently referring to the same subject, in Estate of Glover & Shepley, 127 Mo. 161, this court said: "Defendant having received the fund as administrator of the partner-

ship estate, he should be estopped to deny that he holds it in his representative capacity, and should account for it as such administrator."

Although the general rule is that the real estate of a deceased person descends upon his death to his heirs or passes to the devisees mentioned in the will, yet when an executor is positively and peremptorily authorized by the will to sell the real estate and he exercises such authority and receives the purchase money, he must account to his successor in the probate court for the proceeds of such sale. It will be observed that the will in the present case directed an absolute and peremptory sale of the real estate by the executors. This we think operated as a conversion of the same into personal property, if not from the death of the testator, at least from the date of sale. The proceeds arising from the sale of land made by the executrix and turned over to Wingfield as her successor together with the proceeds of all sales made by him since that time, are legal assets for which he must account as administrator in the probate court. [McMahan v. Compton, 19 Mo. App. 494; 2 Woerner's Am. Law of Admr., secs. 339, 342.]

This court has universally held that whenever an executor or administrator comes into possession of real estate by virtue of his office, whether by force of statute, or under the terms of a will, he is chargeable with all rents and proceeds of sale arising therefrom and received by him in the exercise of his official functions. [Gamble v. Gibson, 59 Mo. 592; State to use v. Scholl, 47 Mo. 84; 2 Woerner's Am. Law of Admr., sec. 513; Lewis v. Carson, 93 Mo. 587.]

The latter case was a statutory proceeding in the probate court against a removed administrator and his sureties to ascertain the amount of money and property in his hands and compel him to account therefor. The executor appointed by the will declined to act and letters of administration with the will

annexed were granted to Carson. His letters having been revoked, Lewis, the public administrator, took charge of the estate. The removed administrator assumed control of the real estate and collected the rents. The will provided that certain legacies should be paid by the executor as soon as practicable, and he was authorized to sell real estate to pay the same. The deceased owned three-fourths of two and one-half acres of land on Grand Avenue, in St. Louis, Missouri. Carson purchased the other one-fourth interest. The administrator, however, did not sell under the power conferred by the will as he might have done, but he and his sister, in their individual names, sold the whole tract, and carried the proceeds of such sale into his accounts as administrator. The question, therefore, was, whether the removed administrator should be charged with the proceeds of such sale. BLACK, J., after reviewing the authorities, makes the following observations: "Although the money was not raised by virtue of his office as administrator, still the administrator received and applied it in his official capacity. He disregarded his duty in not selling under the will or by order of the court, but he received the proceeds and disbursed them under color of his office. Under the principles of the cases cited and that of State to use v. Purdy, 67 Mo. 94, we hold that the administrator and his sureties are accountable for the proper application of the proceeds of the sale of the two and one-half acres."

Tested by the authorities cited we hold that the power of sale given by the will here under consideration being absolute and imperative, is annexed to and follows the office of executor, and survives by virtue of our statute to the acting administrator with the will annexed. The direction to sell the real estate for the purpose of administration, amounts to a conversion of the land, and the proceeds thereof became personal assets for

Vol 161 mo—36

which Wingfield as administrator *de bonis non,* and not as trustee, must account in the probate court.   It follows, therefore, that the probate court had jurisdiction to ascertain the amount of money in his hands and compel an accounting therefor with plaintiff as his successor.

We have examined the authorities cited by counsel for defendant, and while some of them seem to support their contention, yet we think the weight of authority and the better-considered cases are more in accord with the conclusions here reached.   We are unable to discover the application of the case of In re Final Settlement of Rickenbaugh, 42 Mo. App. 328, to this controversy, unless it be as to whether or not under our statute (Revised Statutes 1889, sec. 136) the power of sale given by the will survived to the administrator with the will annexed.   On this point the decision is clearly adverse to defendant's contention, as it was there held that where the power of sale conferred by the will is positive and peremptory, then the statute makes it obligatory upon the administrator *de bonis non* to execute the power and make the sale.   In that case the power of sale conferred by the will upon the executors, was not a power given him in his capacity as executor, but rather a distinct and independent trust whose execution depended upon a contingency which might or might not happen.   It was entirely personal to the appointee, existing separate and apart from the office of executor, and therefore not within the jurisdiction of the probate court.   The present case is not one of that kind. The will did not, as here, positively and peremptorily direct that the land should be sold untrammelled by conditions or limitations.

The only point in judgment in the Rickenbaugh case was whether the executor was entitled to commission on the valuation of land conveyed by him to the legatees in accordance with the terms of the will.   In the case of Coil v. *Pitman's Admin-*

istrator, 46 Mo. 51, relied on by counsel for defendant, an administrator with the will annexed, under the power given by the will, sold land, but failed to make a deed to the purchaser, and the latter applied to the county court for specific performance, which was refused. It was held that inasmuch as the duty of the administrator to make a conveyance arose out of his contract with the plaintiff and not out of the will, the probate court had no jurisdiction, and the circuit court was the proper forum in which to enforce the contract, as much so as if the contract had been made by a devisee under the will. That case therefore has no bearing on this. The court never intended to hold that where the will, as in this case, directed an absolute sale of land by the executor and the distribution of the proceeds thereof, and the executor failed to act, the power of sale could not be carried out by the administrator *de bonis non,* and the latter in case of his removal, not be compelled to account with his successor in the probate court for the proceeds of such sale.

It is next suggested in defendant's brief, that the settlement made by the executrix in January, 1874, operated to take the administration of the estate out of the jurisdiction of the probate court, and consequently all subsequent proceedings thereof, including the appointment of Wingfield administrator *de bonis non,* as well as the order appointing the plaintiff his successor, are void; and that in contemplation of the law he never had charge of the estate as administrator, and therefore can not be required to account in the probate court for the proceeds arising from the sale of these lands. This contention can not be sustained. While it is true that the executrix duly published notice of her intention to make a final settlement of the estate, at the January term, 1874, and afterwards actually filed her accounts for such settlement, showing a balance of $375.80 in her hands, unfortunately for defendant's contention,

the court, while approving the settlement, declined to order the discharge of the executrix from her trust, or permit the estate to be finally closed up, but on the contrary, by an order of record expressly decreed that the estate should remain open and the administration thereon be continued for the purpose of selling the real estate under the power contained in the will, and loaning out the proceeds thereof. The record further shows that at the time of such settlement the executrix had sold a portion of the real estate under the power contained in the will and still had in her hands a note for $1,200 representing a balance due from the price thereof, together with $800 in cash received by her on account of the purchase money thereof, which, however, was not accounted for in her settlement, and in respect to which no order of distribution was made, but for which she afterwards accounted with defendant Wingfield as her successor.

It must be regarded as settled in this State that, until a decree is entered in the probate court discharging the executor or administrator, the office continues, and the executor or administrator remains clothed with the duties of his office and subject to the control and supervision of the probate court. [Rugle v. Webster, 55 Mo. 246; 2 Woerner's Am. Law of Admr., sec. 572.] It results, therefore, that Mrs. Hawkins was still executrix when her authority was revoked in August, 1885, and as such remained within the jurisdiction and subject to the orders of the probate court.

The suggestion that, as all the debts against the estate had been paid, the probate court was without authority to appoint an administrator *de bonis non,* and if appointed he could not maintain this proceeding, is equally untenable. This precise question was decided in Scott v. Crews, 72 Mo. 261, where it was held that it was not essential to the validity of the appointment of an administrator *de bonis non* that there should be outstanding debts against the estate. The power of the

probate court to appoint an administrator *de bonis non* is not limited to cases where debts remain unpaid. When such an administrator is appointed, it becomes the duty of the former administrator under the supervision of the probate court to pay over to him all the money and property in his hands applicable thereto, whether the estate was indebted or not. [State to use v. Farmer, 54 Mo. 439.]

Defendant Wingfield, as administrator, having sold all the real estate belonging to the deceased (except that in which the widow had a life estate) under the power of sale contained in the will, and received the proceeds therefor, together with the notes and money delivered to him from the former executrix and shown to be in his hands at the time of his removal, it becomes his duty to make a settlement of his accounts with the plaintiff as his successor, and upon such settlement to pay over to him the balance of such sale so remaining in his hands, whether the estate was indebted or not. [State ex rel. Crane v. Heinrichs, 82 Mo. 542.]

It follows from the foregoing considerations that the judgment of the court below is reversed, and this cause remanded to the circuit court with directions to proceed in accordance with this opinion, and ascertain the amount of money and property in Wingfield's hands belonging to said estate, and render a judgment against him and his sureties therefor. *Brace P. J.,* and *Valliant, J.,* concur; *Marshall, J.,* absent.