## LLEWELLYN, Appellant, v. LLEWELLYN, Respondent.

St. Louis Court of Appeals, February 5, 1907.

1. EQUITY: Conversion of Land into Money: Wills: Distribution in Partition. A will directed that certain land and personal effects should be sold, the proceeds loaned and interest paid to the widow until the youngest daughter should become of age, and then the proceeds should be equally divided among certain children. Before the executor was able to sell the real estate, a partition proceeding was begun and partition ordered, and the land sold pursuant to the decree. While the partition proceeding was pending, the children having an interest in the land

under the will conveyed their interest. *Held*, in the distribution of the proceeds of the sale in partition, the executor was entitled to the fund as against the grantee of the children.

2. ———: ———: ———. The positive direction to the executor to sell the real estate and the blending of the real estate and personal property by the terms of the will and the testator's intention to create a fund out of both species of property and bequeath its income in money, makes a case for the application of the equitable doctrine of conversion, so that the land under the circumstances should be treated as money.

Appeal from Clark Circuit Court.—*Hon. E. R. McKee,* Judge.

REVERSED AND REMANDED (*with directions*).

*O. S. & G. M. Callihan* for appellant.

The quitclaim deed is inoperative under a mere description of the land to transfer said fund or any part of same to defendant, even if such had been the intention of grantors in executing it. It conveyed to him only the twenty-four fifty-sixths part of the land inherited by them from John W. Llewellyn and Josephine Waples, and their interest in a fund in the hands of E. P. Spangler as administrator of said John W. Llewellyn, arising from a sale in probate of the other part of the John W. Llewellyn land; this latter interest being specifically mentioned and described in the deed. 7 Ency. of Law (2 Ed.), pp. 464, 465, 466, and cases cited; Bisphams Equity (2 Ed.), secs. 307, 308, 320, and cases cited; Compton v. McMahan, 19 Mo. App. 494; Francisco v. Winfield, 161 Mo. 560; Cottman v. Grace, 3 L. R. A. 146; Hope v. Brener, 18 L. R. A. 462; Harrington v. Pier, 50 L. R. A. 311; 3 Pomeroy's Eq. Jurisprudence (2 Ed.), secs. 1159, 1160-1162 and 1164, and cases cited.

*Whiteside & Yant* and *T. L. & L. J. Montgomery* for respondent.

The partition decree was rendered May 31, 1904. The youngest child became of age October 12, 1904.

The sale to respondent took place October 15, 1904. The motion to rebate the interest of plaintiff, executor, in favor of respondent was filed October 21, 1904. The record, therefore, discloses adverse claims to the proceeds of sale awarded to the plaintiff, executor, appellant here, in the decree, and the statute expressly authorizes the court to hear and determine same in all partition proceedings, which was done in this case. R. S. 1899, sec. 4416; Barkhoefer v. Barkhoefer, 93 Mo. App. 379.

GOODE, J.—This controversy is over a portion of the proceeds realized by the sale in partition of sixty-eight acres of land. John W. Llewellyn, who died intestate December 16, 1886, owned the land in fee and is the original source of title to which the claims of all the parties in interest can be traced. He left surviving him as heirs at law, his father, Jacob W. Llewellyn, his brothers and sisters of the whole blood, Charles T., George E. and Martha A. Llewellyn and Nancy J. Benning and Josephine Waples, and his sisters of the half blood, Mary S., Maud U., Jessie and Edith A. Llewellyn. It follows that the land was inherited in eight undivided interests, six of which went to heirs of the whole blood and two to heirs of the half blood. Josephine Waples bought the undivided interests of Charles T., George E. and Jacob Llewellyn and Nancy J. Benning, thus acquiring an undivided five-eighths interest, which she died owning, leaving surviving her her husband Eugene Waples. They had a child which died in infancy and her said husband was therefore entitled to a life estate by curtesy in her said five-eighths interest. The heirs left by said Josephine Waples were her father, Jacob W.; her brothers, Charles T. and George E. Llewellyn; her whole sisters, Martha A. Llewellyn and Nancy J. Benning; and her half-sisters, Maud, Mary, Jessie and Edith Llewellyn. After her death the interests stood

thus: Martha A. was entitled to an undivided one-eighth interest in the land as heir of her brother, the original owner, John W. Llewellyn, and to an undivided five fifty-sixths interest as the heir of her sister, Josephine Waples; that is to say, Martha was entitled to an undivided twelve fifty-sixths part. The father, Jacob W., the brothers, Charles T. and George E., and whole sister, Nancy J. Benning, were each entitled to a five fifty-sixths part as the heirs of Josephine Waples, and her four half-sisters each to an undivided one-sixteenth interest as heirs of John W. Llewellyn and five one-hundred-and-twelfths interest as heirs of Josephine Waples; or, adding those interests to a six fifty-sixths part. All interests inherited from Josephine Waples were subject to the life estate of Eugene Waples; that is to say, his life estate in five-eighths of the land. This estate by the curtesy Eugene Waples conveyed to Jacob Llewellyn, who, therefore, at his death February 16, 1895, owned said curtesy for the life of Waples, besides the five fifty-sixths part he had inherited from Mrs. Waples subject to said curtesy. By his last will Jacob Llewellyn appointed his son Charles T. Llewellyn his executor and directed him to sell certain property, including the land in controversy. The clause of the will in which the direction was given is as follows:

"Seventh. I hereby appoint my son, Charles T. Llewellyn, my executor to carry out the provisions of this will, and he or my administrator, should it become necessary to have one, is directed to collect all notes and accounts due me, sell stock should I leave any undisposed of, dispose of to the best advantage all my right, title and interest in and to one hundred and sixty acres, the east half of the east half of section twenty-six (26) and twenty acres, the south end of the east half of the southeast quarter of section twenty-three (23) and three acres, more or less, off of the north end of the east half of the northeast quarter of section thirty-five (35), all

in township sixty-four (64), range seven (7), and dis-
·pose of any personal effects that I may leave undisposed
of, and after paying burial expenses and all just de-
mands, shall loan the remainder at interest, taking real
estate security only, and shall pay over to my wife,
Olivia M. Llewellyn, the interest thereon annually until
my youngest daughter, Edith Ann, arrives at the age of
eighteen years, the same to be used at the discretion of
my said wife for her own and her children's benefit; and
when the youngest of her children is of age, the principal
of the proceeds shall be divided equally among the four
children, or those of them living at that time — that is,
Mary S., Maud M., Jessie Udora and Edith Ann, my
four youngest children. I further direct that my ex-
ecutor shall rent all lands conveyed by this will ex-
cept the land conveyed to Olivia M. Llewellyn and her
four children and the lands conveyed to Nancy J. Ben-
ning, and receive the proceeds therefrom and apply the
same to payment of all debts, should there be any left
unpaid after exhausting all proceeds from notes, ac-
counts, stock and sale of interest in lands above de-
scribed and not bequeathed or willed especially, and
continue to rent and receive the proceeds until a suffi-
cient sum has been received to pay all just debts against
my estate, after which said lands to pass to their heirs
to whom willed as above."

Charles T. Llewellyn had attempted, pursuant to
the power given in the will, to sell Jacob W. Llewellyn's
interest, both in fee and for the life of Eugene Waples,
but had not been able to do so at the date of the decree
in partition. On January 29, 1904, and while suit was
pending, but before the decree was entered, Jacob Llew-
ellyn's younger children, Mary, Maud, Jessie and Edith,
conveyed by quitclaim deed, all their interest in the
sixty-eight acres of land to George E. Llewellyn. The
recited consideration for this deed was one dollar; but
testimony shows the true consideration was the compro-

mise of certain ejectment suits then pending regarding other lands. Edith was still a minor when the deed was executed. Other conveyances than this one were executed by other heirs to George E. Llewellyn, by virtue of which, at the date of the decree, he was entitled to a certain interest in the land as found by the court. The court also found the interests of the other parties. One finding was that Charles T. Llewellyn, as executor of the last will of Jacob W. Llewellyn, was entitled to a certain undivided interest for the life of Eugene Waples (being said Waples' curtesy) and also entitled to a five fifty-sixths interest in fee, both held in trust for the widow and children of Jacob Llewellyn, deceased, according to the terms of the will. This decree was right in our judgment. But the order of distribution appealed from was erroneous. The land not being susceptible of division in kind, was ordered sold. After the sale had been made, George Llewellyn filed a motion for distribution, asserting the interest he had acquired from the four younger children of Jacob W. Llewellyn by the quit-claim deed (i. e., the undivided five-sixths interest in fee in the premises held by plaintiff as executor for them and the widow, subject to the life estate of Eugene Waples, and also said life estate) and demanding that the value of those interests be ordered paid him out of the proceeds of the land. The court sustained this contention and the executor, Charles T. Llewellyn, appealed. The question for decision is, whether or not the quit-claim deed of the younger children of Jacob Llewellyn conveyed such an interest in the sixty-eight acres in controversy as to entitle George Llewellyn to be paid the value of the interest out of the proceeds of the sale. To so hold would be to defeat the plain intention of Jacob Llewellyn's will, which was that his widow Olivia should have, use and enjoy the proceeds of the sale of some of his real and all of his personal property until his youngest daughter, Edith, arrived at full age. To

realize this purpose the executor was directed to collect all notes and accounts due the testator, sell and dispose of his personal effects, sell any stock the deceased left, and also sell his interest in certain described land, including that in controversy. The executor was directed, after paying the burial expenses, to lend all money thus realized, on real estate security, and pay interest annually until the youngest daughter was of age, to Olivia Llewellyn, the widow, for an income to be used by her for her own and her children's benefit. The will further directed that after the youngest child was of age, the principal of the proceeds should be divided equally among the four children, or those then living; with a further provision in the seventh clause of the will for the renting of other lands not ordered sold, and using the rent to pay all debts left unpaid out of the proceeds of the personal property and of the lands ordered sold. It is perfectly apparent that a fund was to be created by the sale of the land described in the seventh clause of the will and the personal property of the testator, and that the income of the fund should be given to Mrs. Llewellyn for the benefit of herself and four children, until the youngest was of age, when the proceeds, or principal, should be divided among the four children. Mrs. Olivia Llewellyn was entitled to the income from the proceeds of the land ordered sold. How this right of hers, plainly given by the will of her husband, could be affected by the conveyance of the four children to George Llewellyn, we fail to see. Nor does it matter that the executor had failed, as yet to sell. It is reasonable to conclude that one of the purposes of the testator was to prevent a sale or division of the land by the children. Real property is treated in equity as personalty, and the rules governing the latter species of property applied to it in order to carry out the intention and terms of a will, in several contingencies; when there is a positive direction to the executor to sell the

real property, or a necessity to sell in order to distribute legacies given in the will or comply with its other terms, or when there is such a blending of the real and the personal estate by the terms of the will, as to show the testator intended to create a common fund out of both species of property and bequeath it or its income as money. [Hunt's Appeal, 105 Pa. St. 128, 141.]    In either of those instances equity will treat the real property as personalty from the death of the testator; and all of them existed in the present case.  The direction to the executor to sell was positive and absolute; it left him no discretion in the matter.  It was necessary to sell in order to realize the purpose of the testator, and the will provided for a common fund to be obtained by selling both the realty and personalty.  We have no doubt that this is a case for the application of the equitable doctrine of conversion.  The will before us cannot be distinguished from the one construed to work a conversion of realty into personalty in Francisco v. Wingfield, 161 Mo. 542, 560, 61 S. W. 842.  [See, too, 3 Pomeroy, Eq. Jur. (3 Ed.), chap. 4; McClure's Appeal, 72 Pa. St. 414; Hocker v. Gentry, 3 Met. (Ky.) 463; Harrington v. Pier, 105 Wis. 485, 50 L. R. A. 307; Given v. Hilton, 95 U. S. 591.]  Those authorities are conclusive of the question.  The plaintiff is entitled to the disputed proceeds as testamentary trustee, to be disposed of as directed in the will.

The judgment is reversed and the cause remanded with the direction to the court to distribute the proceeds of the land in accordance with this opinion.  All concur.